SENECA LINCOLN *vs.* TAUNTON COPPER MANUFACTURING COMPANY.

A minority report made by one of three auditors to whom a case has been referred is inadmissible in evidence.

If a case has been referred to auditors to determine whether the defendants have injured the plaintiff's land in a particular manner, and whether his land has depreciated in value, and if so how much, and to what extent the depreciation has been caused by the defendants, if any, and the auditors have reported that the land has depreciated to a certain specified extent, but that the depreciation has not increased within six years before the commencement of the suit, and that they did not find that such depreciation had ever to any appreciable extent been caused by the defendants, the whole report may be read to the jury, although the defence of the statute of limitations was not set up in the answer.

In an action to recover damages for an injury to the plaintiff's land by the working of a copper mill which produced noxious gases, and from which poisonous substances were discharged, so that the gases and water from the mill afterwards reached and injured the

land, the evidence of persons other than experts is inadmissible to show that other lands in the vicinity, not owned by the plaintiff, but exposed to the same influences, have been injured from the same cause ; or that other lands in the vicinity, not owned by the plaintiff, and not exposed to the same influences, have remained unimpaired in their productiveness.

If in such action an expert called by the plaintiff has testified that he has obtained copper from grasses taken from the plaintiff's land, the defendants may introduce similar testimony to show that copper exists and has been obtained in grasses not exposed to influences like those complained of.

TORT. The declaration alleged that the defendants have a copper mill on Three Mile River in Norton, from which poisonous substances are thrown into the stream and poison the water ; that the plaintiff has a farm bordering on the river below the mill ; that the water destroys his crops upon, and the soil of, the meadows which are overflowed by the stream, and is unfit for his cattle to drink ; that the defendants have at their mill a furnace for making zinc paint and melting copper and zinc ; and that gases charged with arsenic escape through the chimney of this furnace, and are carried through the air to the plaintiff's land, and injure his soil and crops.

The case was referred to three auditors, to examine and determine " 1. Whether the defendants have injured the said land in the way and manner set forth in the declaration ; and 2. Whether the plaintiff's land has depreciated in value ; and if so how much, and to what extent has the depreciation been caused by the defendants, if any." Two of the auditors made a report as follows : " We do not find that the defendants have injured the plaintiff's said lands in any way or manner set forth in the declaration. We do find that the plaintiff's said land had depreciated in value to the amount of one thousand dollars at the time of commencing this suit, but such depreciation had not increased for six years next prior to the date of the plaintiff's writ in this case. And we do not find that such depreciation had or has, to any appreciable extent, been caused by the defendants." The other auditor made a report finding that the defendants had injured the plaintiff's land ; that the land has depreciated in value to the amount of two thousand dollars ; and that such depreciation has been caused by the defendants to the amount of eight hundred dollars permanent damage.

At the trial in this court, before *Chapman*, J., the plaintiff objected to the reading of the report of the two auditors, on the ground that they had passed upon matters not required by the rule of court; and especially to the reading of that part which relates to the depreciation of the land; but the objections were overruled. The plaintiff offered to read the report of the other auditor to the jury, but the judge ruled that it was not admissible in evidence.

After the opening of the plaintiff's case, the jury were taken to the plaintiff's land, the defendants' works, and such other objects as might be pointed out to them by the counsel of the respective parties. The plaintiff then introduced evidence tending to prove that a certain scum, together with gudgeon grease and other substances floating in and upon the waters of Three Mile River, below the defendants' works, settled upon his meadow and injured the vegetation and soil, and also that the smoke and gases from the defendants' works settled on his lands and produced injurious effects upon the vegetation.

The plaintiff called among other witnesses one Arnold, who testified that he was a farmer and lived in Norton, and was acquainted with the river and meadows adjoining it; that at certain seasons of the year there was frequently a scum floating on the surface of the river, and he had seen it settle on the lands between the copper works and the plaintiff's meadows. The plaintiff then asked him, " Do you know what effect that scum produced upon that land?" This was objected to by the defendant, and the objection was sustained by the court. The plaintiff then asked the witness, " Do you know the condition of the meadows on Three Mile River, nearest the copper works?" This was objected to, and the objection was sustained.

Josiah Woodward was called as a witness by the plaintiff, and testified that he was eighty-three years of age and was acquainted with the defendants' works and the plaintiff's farm; that he had always lived within one hundred yards of the copper works, and owned land near them bordering on the river; and that he had seen smoke coming from the defendants' chimney and floating in the air, but had never seen it over the plaintiff's

land. The plaintiff then asked him, " Do you know whether that smoke has any effect upon the land or grasses or vegetation, and if so how did you obtain your knowledge ? " It was not contended that he was an expert, and the plaintiff's counsel stated that they expected to prove that his knowledge on the subject was derived from common observation. The question was objected to and excluded. The plaintiff then asked him, " What is the condition of the grasses and vegetation on the lands about your house ? " Also the question, " Do you know what the condition of the vegetation on lands next below the copper works on Three Mile River now is, and do you know what it was from 1854 to 1860 ? " Both questions were objected to, and the objections were sustained. The witness admitted that he knew nothing about the condition of the plaintiff's lands; and the judge ruled generally, that the plaintiff could not offer any testimony as to any injury which was occasioned by the defendants' works to any lands not belonging to the plaintiff, except so far as the evidence might come from experts.

The plaintiff called John Crane of Norton, a farmer, and offered to prove by his testimony that the meadows on Rumford River, which are overflowed by it in freshets, have continued unchanged for thirty years. This river enters Three Mile River below the defendants' works, and above the plaintiff's land. The evidence was objected to and was excluded. There had already been evidence given tending to show that the defendants' works had been in operation thirty years or more, and that the plaintiff's meadows were formerly fertile, and had been growing poorer for fifteen years or more.

The plaintiff read in evidence a deposition of Professor Eben N. Horsford, who was admitted to be an expert in such matters, and who testified to certain experiments made by him with grasses taken from the plaintiff's land, when it was overflowed by the river, by means of which he obtained copper from the grasses. The defendants contended that many grasses which were not subject to the influence of the copper works or other artificial influences often contained copper, and called Professor

Chace of Brown University, who was also admitted to be an expert, and who testified that copper frequently exists in vegetation. In support of his opinion, he stated that he had made two experiments similar to those of Professor Horsford. One was with grass which he obtained from land in Rhode Island, which was free from such influences; and the other with hay which he obtained from a livery stable in Providence, said to be raised in Connecticut. The plaintiff objected to his statement of his experiments, but the objection was overruled, and he further stated that he obtained copper in each instance.

The jury returned a verdict for the defendants, and the plaintiff alleged exceptions.

*J. Brown & C. A. Reed*, for the plaintiff. The report of the two auditors, upon a matter not submitted to them, was incompetent evidence. *Flint* v. *Hubbard*, 1 Allen, 252. *Locke* v. *Bennett*, 7 Cush. 445, and cases there cited. *Allen* v. *Hawks*, 11 Pick. 359. The report of the other auditor should have been received. *Lazarus* v. *Commonwealth Ins. Co.* 19 Pick. 81. The testimony as to injuries to meadows between the plaintiff's land and the defendants' works was direct evidence to prove the existence of injuries arising from those works. It was evidence of the same body of water operating in one continuous line, in the same way, at the same time, on land similarly situated. 1 Taylor on Ev. § 54. 1 Greenl. Ev. § 52. *Bradford* v. *Boylston Ins. Co.* 11 Pick. 165. *Standish* v. *Washburn*, 21 Pick. 237. *Emerson* v. *Lowell Gas Light Co.* 3 Allen, 410. *Concord Railroad* v. *Greely*, 3 Fost. (N. H.) 244. *Jones* v. *Williams*, 2 M. & W. 326. *Griffits* v. *Payne*, 11 Ad. & El. 133. *Doe* v. *Kemp*, 2 Bing. N. C. 102. A scientific education is not essential to constitute one an expert, and an opinion derived from common observation only may be competent testimony. The implication from the ruling of the court is, that one whose knowledge is derived from common observation is not an expert, and it was erroneous to confine the evidence to the testimony of scientific men. *Cottrill* v. *Myrick*, 3 Fairf. 222. *Porter* v. *Pequonnoc Manuf. Co.* 17 Conn. 249. *Vandine* v. *Burpee*, 13 Met. 288. *Webber* v. *Eastern Railroad*, 2 Met. 147. *Davis* v. *Mason*, 4 Pick 156

The testimony as to the condition of the meadows on Rumford River was also competent. The statement and details of Professor Chace's experiments were inadmissible. *Ingledew* v *Northern Railroad*, 7 Gray, 91. *Keith* v. *Lothrop*, 10 Cush. 453.

*C. I. Reed & E. H. Bennett*, for the defendants.

DEWEY, J. We perceive no ground for exceptions to the ruling of the court in the matters relating to the report of the majority of the auditors. The statute of limitations constituted no part of the defence, and their finding that the deterioration of the plaintiff's land had not increased within six years did not raise any new issue, or affect the case, except as being a part of the facts bearing upon the general question whether the plaintiff's land had been injured by the defendants by the causes set forth in the declaration.

The court properly ruled that a separate and dissenting report made by one of the auditors was not admissible as evidence under the statute. There can be but one legitimate report on a reference of a case to auditors, and that is the report of the majority, upon a hearing by all the members. The fact will always appear from the report itself that it had not the concurrence of all the auditors, but it is nevertheless the report that is to be *prima facie* evidence upon the matters committed to them. Gen. Sts. *c.* 121, § 48.

The second ground of exception is the rejection of the proposed inquiries put to Arnold and Woodward. As to the first branch of these inquiries, in the opinion of a majority of the court, the question proposed is not to be considered as an inquiry as to a physical fact, occurring in the presence and under the immediate observation of the witnesses at the time, but a mere statement of a general result or effect produced by the settling of scum on certain lands between the copper works and the plaintiff's meadows. The witnesses were not offered as experts, and the admission of their evidence was not asked upon that ground. The localities to which the questions referred were other lands than those of the plaintiff, and on this account are obnoxious to the objections which arise to the more extended course of inquiry proposed in reference to these witnesses, and which we shall proceed to consider.

The proposition was to show the present condition of other meadows upon the Three Mile River, and in the vicinity of the defendants' works. This general inquiry the court rejected, and ruled that the plaintiff could not offer any testimony as to any injury which was occasioned by the defendants' works to any lands not belonging to the plaintiff, except so far as the evidence might come from experts. The question in issue was, whether the plaintiff's land had been injured by the alleged torts of the defendants. To show this, the plaintiff was allowed the fullest inquiry as to the former and present state of his own land, the state of things at the defendants' works, the creation thereby of noxious scums and gases, and to call experts, deriving their knowledge from experiments and observation, to testify as to the effect of these to the fullest extent.

But in the opinion of the court, the plaintiff was not authorized to introduce evidence of similar alleged grievances suffered by owners of other lands. Such inquiries would present as many distinct issues as there were alleged cases, and would involve questions of fact equally difficult and extended with those which would arise in the particular case of the plaintiff. The effect would be, if such evidence was admissible, that the defendants must be prepared to go into a full hearing of any alleged injury attributed to this mill caused to all the lands bordering on the river. How would this advance the inquiry in the present case ? If the purpose was, as was stated by the plaintiff, to show that the ingredients in the water from the defendants' works settling on the land, and the gases from the chimney, injured vegetation and the soil, why not have shown it by proof of its effect upon the plaintiff's land ? If such effect has been produced here, it establishes the fact, and needs no inference from what has been done in other localities, and avoids not only the unlimited inquiry as to its effect upon other lands, but the further inquiry as to the similarity of soil and exposure of such lands, and also the effect of their greater proximity to the works. We see no sufficient practical advantage from this unlimited inquiry as to the past and present condition of other meadows while we can see that it might greatly

multiply the issues, so that the case very possibly might be tried much more upon the evidence of injuries which the defendants had caused to others than upon the evidence applicable to the plaintiff's case.

In the rejection of this testimony, the court seems but to have followed the decision of this court in the recent case of *Emerson* v. *Lowell Gas Light Co.* 3 Allen, 410. That was an action of tort for an alleged injury to the plaintiff's health from the inhalation of gas which escaped from the defendants' works through the negligence of their servants; and, for the purpose of showing that the inhalation of gas was noxious, and that its effect was to produce sickness, it was proposed to show in evidence that a large number of houses in the neighborhood, the drains of which were connected with the sewers, were filled with gas, and especially to show that it entered the house adjoining and back of the plaintiff's house, and that wherever the gas entered sickness followed; but the court rejected the evidence as incompetent. In the opinion delivered in that case, it was said: " Each separate and individual case must stand upon, and be decided by, the evidence particularly applicable to it. . . . If such evidence was admissible, the issues in a single cause might be' indefinitely multiplied; and this would tend only to confusion, and to mislead the jury. . . . The plaintiffs could not establish or strengthen the evidence in their own case by any proof concerning the condition of, or the injuries received by, another person."

It was upon the same principle that this court, in an action against a town for an injury occasioned by a defect in the highway, affirmed the ruling of the court of common pleas, nolding evidence not admissible on the part of the plaintiff, for the purpose of proving the existence of such defect, that another person before the injury complained of received a similar injury at the same place and from the same alleged defect without any negligence on his part, as it would raise a collateral issue, and result in testing one point in dispute by another. *Collins* v. *Dorchester*, 6 Cush. 396.

So also on a question of damages by the location of a railroad

it was held that a witness was incompetent to testify as to inconveniences which he has suffered on his farm by the ordinary running of railroad cars, for the purpose of showing the inconveniences suffered by one owning a farm in that vicinity, as such evidence would raise an issue collateral to that on trial. The court said: " The case itself must be tried by the facts which actually take place, and not by those which transpire in other favorable cases." *Concord Railroad* v. *Greely*, 3 Fost. (N. H.) 237.

The proposed testimony of Crane as to the state of the meadows on Rumford River, and that they had not deteriorated, was properly rejected for similar reasons. It was also subject to the objection of being evidence as to land situated on another river.

It is objected that this view of the law is in conflict with certain earlier decisions of this court, found in the cases of *Bradford* v. *Boylston Ins. Co.* 11 Pick. 165, and *Standish* v. *Washburn*, 21 Pick. 237. It becomes necessary to recur to those cases to consider whether the inconsistency supposed is apparent or real, and, if the latter, which is in principle the sounder exposition and the one to be applied to the present case.

In the case of *Bradford* v. *Boylston Ins. Co.* the plaintiff claimed to recover damages on a policy of insurance upon certain bales of blankets shipped on board the Aspasia at Liverpool, to be conveyed to New York; and he contended that, owing to tempests on the voyage, the salt water found access to the goods and damaged them, and offered evidence tending to prove these allegations. The defendants contended that the damage arose from some defect in the manufacture of the blankets, or from their having been fraudulently packed in a wet state for the purpose of increasing their weight. The defendants were allowed to offer in evidence the testimony of one Russell, that during the year 1828 he imported certain bales of blankets manufactured by Wood, (the same person who manufactured the plaintiff's blankets,) which proved to be damaged, and in his opinion by being packed in a wet state for the purpose of increasing their weight; also the testimony of one Lee,

Lincoln *v.* Taunton Copper Manufacturing Company.

that he received a consignment of blankets from Wood in three different vessels, that were all damaged on the inside, the outside of the bales being dry, and that the damage of the blankets of the plaintiff was of a similar character and of a peculiar kind, and not like that produced by salt water. This certainly was a liberal admission of other independent matters in which the plaintiff had no concern, for aught that appears not confining the defendants to other sales made at the same time, but embracing the whole year, and requiring the plaintiff to meet the issue whether these goods imported by other persons were really and truly Wood's manufacture, whether they were not also subject to the effects of a storm on the passage, or other exposure, and whether the damage to them was similar to that suffered by the plaintiff in his bales. We can hardly perceive how so extended an inquiry could have been allowed, involving so many distinct transactions, and why evidence of this character should have been held competent. We see that fraud on the part of the manufacturer was suggested by the defence, and this charge might have had its influence in leading to the admission of evidence of other transactions, although it would seem that the plaintiff had a right to insist on the exclusion of all inquiry into collateral matters, and that the fact of fraudulent conduct during the same year by the manufacturer of the goods sold to the plaintiff, in his transactions with others, was not competent evidence to prove the fact that the plaintiff's bales of blankets had been fraudulently packed in a wet state to increase their weight. No particular case was cited by the counsel supporting its competency, and they merely referred to 2 Stark. Ev. 380, which states some general principles as to collateral evidence.

The case of *Standish* v. *Washburn*, 21 Pick. 237, has much more of similitude, in the nature of the question raised, than the case we have been considering. It was not, however, the present case. It was not a case where the plaintiff proposed tc sustain his allegations of injury occasioned to his land by proof that others had sustained similar injuries, but the question was whether the defendant might not, in reply to the plaintiff's

evidence tending to show an unfavorable change in the quantity and quality of the products of his land, and from which he asked the jury to infer that a change had taken place in the use of the defendant's mill, prove by a witness whose land was not flowed, that similar changes had taken place in his land during the same period. All that was in fact decided by the full court in that case was, that the presiding judge did right in excluding such evidence, there being no proof that the land of the witness was similar to that of the plaintiff. Had such proof existed, the evidence proposed would have been admitted at the trial, and the correctness of that seems to be assumed by the court in the brief opinion stated by the reporter, although it became unnecessary to decide that point. Taking this case as one in which the court have held that the evidence would be competent, upon the additional proof that the meadows were similar, it would be an authority for the plaintiff to this extent — that a defendant may show the deterioration of another lot not exposed to the alleged causes of injury, by way of rebutting the inference that the plaintiff would draw from his proof of the deterioration of his own land, namely, that the mill of the defendants had caused it. Such a doctrine would seem to be inconsistent with the principles we have stated as to the multiplying of issues by the introduction of collateral inquiries calculated to withdraw the attention of the jury from the real issue to the consideration of other lands, their peculiar qualities of soil, their deterioration and the causes of it, and in fact to do just what this court said, in *Collins* v. *Dorchester*, should not be done, " test one point in dispute by another." It seems also to be at variance with the later decision in the case of *Emerson* v. *Lowell Gas Light Co.*, to which we have already adverted.

The remaining exception taken by the plaintiff is that as to the ruling of the presiding judge, permitting Professor Chace, who, in reply to Professor Horsford, and as an expert, had testified that in his opinion copper frequently exists in vegetation, to state in support of such opinion that he had made two experiments similar to those made by the plaintiff's witness, Professor

Horsford, upon grasses procured elsewhere, and that he obtained copper in each instance.

In the opinion of the court, this evidence was competent, in the case of one called as an expert. *Keith* v. *Lothrop*, 10 Cush 457. *Collier* v. *Simpson*, 5 C. & P. 73. *Dickenson* v. *Fitchburgh*, 13 Gray, 555. In the case of *Ingledew* v. *Northern Railroad*, 7 Gray, 91, an apparently different ruling was made; but we do not perceive that the case of *Keith* v. *Lothrop* was brought to the attention of the court, the volume containing it not having been then published. It seems to us to be the better rule to admit such testimony in the case of an expert, at least to the statement of results.

It will be perceived by the bill of exceptions that no restriction was placed upon the plaintiff as to any evidence that might come from experts.

In the opinion of the court, all the exceptions are to be overruled, and judgment is to be entered upon the verdict for the defendants.