[No. 4776. Decided December 29, 1903.]

AUGUSTA DUBCICH, *Respondent*, v. GRAND LODGE AN-
CIENT ORDER OF UNITED WORKMEN OF THE
STATE OF WASHINGTON. *Appellant.*[1]

APPEAL—REVIEW—MOTION FOR NEW TRIAL—NECESSITY. A motion for a new trial is not necesary to secure a review of rulings made by the trial court during the progress of the trial, and Code of 1881, § 450, dispensing with the necessity of motions for new trials is not essential to the rule, in view of Bal. Code, § 6520, authorizing the review of intermediate orders or determinations on appeal from any final judgment.

WITNESSES—PRIVILEGED COMMUNICATIONS—PHYSICIAN AND PA-
TIENT. Testimony of a physician as to the physical condition of a patient treated by him is properly excluded as privileged, where the exclusion extends only to disclosures while the professional relation existed.

BENEFICIAL SOCIETIES—ACTION ON POLICY—FRAUD IN OBTAINING
MEMBERSHIP—FALSE APPLICATION—EVIDENCE—SUFFICIENCY—QUES-
TION FOR JURY. In an action upon a beneficiary certificate in a mutual society where the defense is that the policy was void on account of false statements as to the deceased member's physical condition, and as to his rejection on a former application for life insurance, a nonsuit is properly refused where the only proof of fraud is evidence of contrary statements by the deceased upon a

[1]Reported in 74 Pac. 832.

former application to a different lodge of the same order, which was rejected, and where the proof further shows that deceased understood and spoke English imperfectly, and did not himself write the former answers, and may have misapprehended their import.

SAME. It is also a question for the jury whether the defendant did not have knowledge, or means of knowledge, of the former answers, where it appears that both applications were forwarded by the local lodges to the same central authority, and were in its possession for a year and a half.

BENEFICIAL SOCIETIES—MEMBERSHIP—EXPULSION—RULES OF SOCIETY—CONSTRUCTION. In an action on a mutual benefit certificate defended on the ground that the member had been expelled for false statements in securing membership, the rules of the society introduced in evidence are to be construed by the court to determine whether they conferred jurisdiction to expel upon mailed notice at a time when the member was insane.

SAME—JURISDICTION OF THE COURTS. In such a case the courts may inquire into the proceedings of the society expelling a member, to determine whether the procedure was fairly conducted under the laws of the society.

SAME—NOTICE OF HEARING—SUFFICIENCY WHERE MEMBER IS UNDER DISABILITY. A mutual benefit society acquires no jurisdiction to enter an order of expulsion on the ground of fraud in securing membership, where at the time of mailing the notice of the hearing, the member is insane, and in a hospital incapable of being present, especially when, before the hearing, knowledge was brought to the society that he was unable to be present and insane; unless, at least, it clearly and unmistakably appears that the laws of the society authorize such a notice.

SAME. A notice by mail of the hearing of charges of fraud in procuring membership in a mutual benefit society, upon which a member is to be expelled, do not stand upon the same footing as a charge of nonpayment of dues, and is not authorized by the laws of a society that do not expressly provide for a mailed notice upon such a charge.

SAME—ACTION ON POLICY—DEFENSES—UNAUTHORIZED EXPULSION—REMEDY OF BENEFICIARY. In an action on a mutual benefit certificate, where the society relies upon an expulsion which was entered against the deceased member while insane, and without jurisdiction, and his death occurs before he can take an appeal, and the beneficiary has no right of appeal, and she offers arbitra-

tion (her only remedy in the society), which is refused, an action in the courts is maintainable and a challenge to the sufficiency of the evidence is properly overruled.

Appeal from a judgment of the superior court for King county, Morris, J., entered March 13, 1903, upon the verdict of a jury rendered in favor of the plaintiff in an action upon a life policy in a mutual benefit society.   Affirmed.

*Benson & Hall (J. W. Kinsley,* of counsel), for appellant.

*Hastings & Steadman,* for respondent.

HADLEY, J.—Appellant is the Grand Lodge in the state of Washington of the fraternal beneficiary society known as, "Ancient Order of United Workmen."   On the 6th day of April, 1900, the authorized officials of appellant issued a beneficiary certificate wherein it is recited that Stephen Dubcich is a member of Columbia Lodge No. 2, of said order, located at Seattle, Washington, and is entitled to all the rights and privileges of membership, and to designate the beneficiary to whom the sum of $2,000 of the beneficiary fund of the order shall, at his death, be paid.   It is also recited that said Stephen Dubcich has designated, as such beneficiary, Augusta Dubcich, bearing to him the relation of wife.   The respondent here is the beneficiary named in said certificate.   In January, 1902, said Stephen Dubcich died.   The respondent, as said beneficiary, demanded payment under said certificate, which was refused, and this action was brought to recover the amount named therein.

The defense is that the deceased made false representations to appellant at the time he made application for membership, on account of which he was expelled from the order, and that respondent is therefore not entitled to share

in the beneficiary fund. The defense, as urged here, is presented upon two theories: (1) that by reason of the alleged false representations the contract with deceased was void *ab inito,* and (2) that by reason of his expulsion the contract was terminated. The alleged ground of expulsion, however, is based upon the same facts which are urged as making the contract void from the beginning. Those alleged facts are that the deceased stated in his written application for membership, in answer to questions, that he had never been afflicted with frequent headaches or syphilis, and that he had never before applied for life insurance and been rejected; whereas, it is alleged that he had formerly applied for membership in Seattle Lodge No. 60 of the same order, and had answered said questions as to afflictions in the affirmative. The cause was tried before a jury, and a verdict was returned in favor of respondent for $2,000, with accrued interest. Judgment was entered upon the verdict, and this appeal is from the judgment.

Respondent moves to dismiss the appeal on the ground that, as no motion for new trial was made, the judgment cannot, for that reason, be reviewed here. The errors specifically assigned, however, all involve rulings made by the trial court during the progress of the trial. The office of the motion for new trial, in its necessary relation to the appeal, is to give the trial court opportunity to pass upon questions not before submitted for its ruling, such as misconduct of the jury, newly discovered evidence, excessive damages, error in the assessment of the amount of recovery, and similar questions. The motion seems to serve no necessary purpose, as far as concerns the review on appeal of questions once submitted to, and decided by, the trial court. It is true, if such questions are raised a second time, under the motion for new trial, the trial court

may consider them, and may review its own rulings made at the trial to the extent of correcting them by granting a new trial. But such review by the trial court is not necessary in order that questions once actually decided by it in the cause may be considered on appeal. This court in effect so held in *Johnson v. Maxwell,* 2 Wash. 482, 27 Pac. 1071, and *Kennedy v. Derrickson,* 5 Wash. 289, 31 Pac. 766. In the last named case the court said:

"The only effect which the failure to make such motion can have upon the proceedings in this court is to limit the questions which may be properly presented here."

It is contended that those decisions were based upon § 450 of the Code of 1881, which provides that "the supreme court may review and reverse on appeal or writ of error any judgment or order of the district court, although no motion for a new trial was made in such court;" and it is urged that no such provision now exists in our statutes. Our attention has, however, not been called to any existing statute which affirmatively provides that the motion is necessary as a preliminary to the review on appeal of questions passed upon during the progress of the trial. We think, in the absence of such a statute, that the provisions of § 6520, Bal. Code, are broad enough to authorize the review of such questions here without a motion for new trial. We refer particularly to the following in said section:

"Upon an appeal from a judgment, the supreme court may review any intermediate order or determination of the court below which involves the merits and materially affects the judgment appearing upon the record sent up from the superior court."

The motion to dismiss the appeal is denied.

It is assigned that the court erred in excluding the testimony of a physician as to the physical condition of the

deceased at the time he was treated by the witness. Ob-
jection was made to the questions on the ground that they
necessarily called for the disclosure of privileged commu-
nication between physician and patient. We think the
objection was properly sustained on that ground. The court,
in its rulings upon that subject, discriminated between
information acquired when the relation of physican and
patient existed, and that which was otherwise acquired.
The exclusion extended only to the disclosure of informa-
tion acquired while the professional relation existed. We
think the court did not err in that particular.

It is next assigned that the court erred in overruling ap-
pellant's challenge to the sufficiency of the evidence. As
before intimated, the theory of the appellant, as urged
on appeal, is twofold; viz., that the contract was void *ab
initio* for fraud, and, if not void, that it was terminated
by the expulsion of the deceased from the order. The
burden of appellant's brief is, however, devoted to the
theory that the expulsion of the deceased is the thing
which determines against respondent's recovery. The brief
contains the following statement: "Under the pleadings
in this case it is admitted that Dubcich was a member in
good standing up to January, 1902." Again, it is stated
in the brief as follows:

"The penalties of an old line company run against the
policy in the hands of innocent women and children, while
all the penalties in the A. O. U. W. run against the mem-
ber. For instance, in this case, the claim of the defendant
is that the membership on which this claim is founded
was fraudulently obtained. The penalty for that offense
is not, as in an old liner, that the certificate shall be void,
but that the member so offending shall be expelled."

It is thus conceded in appellant's brief that the de-
ceased was an actual member in good standing until,

it is claimed, he was expelled; and further, that the certificate was not void from the beginning, but was extinguished by the subsequent act of expulsion.    In view of these concessions in the brief, the mere suggestion, at its close, that the certificate was void *ab initio* is out of harmony with the argument in the great body of the brief. The latter proposition is merely suggested, and is not discussed to any extent, or supported by the citation of authorities.    We shall, however, discuss both propositions in their relation to the case at bar.

Assuming for the sake of the argument, but not deciding, that a certificate would be rendered void *ab initio* by reason of false statements made in the application for membership, what is the situation under the evidence in this case?    We do not think the evidence was such that the court should have ruled, on the challenge to the sufficiency thereof, that the statements in the application for membership had been shown to be false.    That was a fact for the jury to determine.    The only really tangible evidence tending to impeach the truth of the statements in the application was testimony to the effect that, in a former application to another lodge of the same order, the deceased had answered similar questions in the affirmative, which were negatively answered in the one upon which his membership was initiated.    It was for the jury to say whether the former answers were made under a misapprehension of the import of the questions.    It appeared in the evidence that the deceased was of Austrian nationality, and spoke and understood the English language imperfectly.    It also appeared that, although the application was signed by the deceased, yet the answers to the questions were not written by him, but by the examining physician.    The question as to whether he had ever applied for life insurance and been rejected, which was negatively

answered in the last application, was subject to the following considerations: It was possible for the applicant to have understood the question to relate to an application for mere life insurance, submitted to a company dealing with nothing else, and he may not have regarded his former application as one for life insurance strictly, but as one for membership in a fraternal order. These circumstances were all for the jury to consider in determining whether the statements in the last application were true or false. The truth or falsity of the statements in the last application was what was to be determined, and, if they were in fact true, the former statements were not material.

Another element is also involved. Both of these applications were forwarded by the local lodges to the same central authority of the Grand Lodge, and both passed upon by that authority. It therefore became a question for the jury whether the appellant actually knew, or by the exercise of reasonable diligence should have known, the contents of the first application, when it issued the certificate in question. On the challenge to the sufficiency of the evidence, the court was therefore confronted with the principle that, if appellant knew, or by the exercise of reasonable diligence should have known, of the former statements, when it issued the certificate, then it should be deemed to have waived the question of misrepresentations. It had also appeared that, for more than a year and a half after the statements of the last application were in appellant's possession and notwithstanding the contents of the former, which were also in its possession and under its control, appellant received and acknowledged the deceased as a regular member of the order in good standing, and also regularly received from him and appropriated the collectible dues. For these reasons we

think the court did not err in overruling the challenge to the sufficiency of the evidence, even when considered upon the theory that fraud would have made the contract void from the beginning. Even under that theory, it was for the jury to find as a fact whether fraud existed or whether the misrepresentations, if any were made, had been waived.

We come now to consider the other feature involved under the challenge to the evidence, and to the discussion of which appellant's brief is chiefly directed; viz., was the evidence such that the court should have ruled that the deceased had been expelled from the order? Some time toward the latter part of the year 1901, the deceased, Dubcich, received a severe injury upon the skull. A surgical operation followed, and there was evidence to the effect that he was thereby seriously incapacitated mentally. It was alleged in the complaint, and not denied by the answer, that on the 14th day of January, 1902, he was adjudged to be insane by the superior court of King county, and was committed to the asylum for the insane at Steilacoom, Washington. It is alleged in the answer that on December 14, 1901, the deceased was duly and personally, and by mail, notified of the charges against him, and was thereby required to appear before the lodge on December 20, 1901, to answer the same. Both personal notice and notice by mail are alleged, but at the trial there was no evidence of personal service, and notice by mail was relied upon as being authorized by the laws of the order, to which, it was urged, the charged member had subscribed, and by which he was therefore bound.

The evidence shows—for there is none to the contrary— that the mailed notice was received by the respondent, the wife of the charged member; that the latter was then in Providence Hospital, at Seattle, and was in such condition

mentally that he could not comprehend the meaning of any notice, and did not know that he was charged with any offense. An application was made to the lodge by respondent, in behalf of her husband, for postponement of the hearing upon the charges on account of his physical and mental condition. His alleged incapacity, both mental and physical, was stated in the application for continuance. The lodge, however, disregarded the application, and proceeded to consider the charges, which resulted in what is claimed to have been an expulsion. The respondent afterwards received a mailed notice of the alleged expulsion on the very day of her husband's death, he being dead at the time.

Aside from the admitted adjudication of insanity, soon after the time the charges were preferred, it was testified at the trial, and not disputed by other testimony, that the deceased was in fact insane when the charges were preferred. A personal notice of the charges was alleged, but not proven; and, even if a mailed notice is ordinarily sufficient under the rules of the order, yet we do not think such a rule could in reason have been intended to apply when the alleged offender is insane. An important contractual right and individual character for integrity and morality were involved in the charges, and in such event courts of justice will not proceed against an insane person, when insanity is suggested, without seeing that he is duly represented by competent authority to protect his rights, and that such representative is duly notified. The laws of the order on the subject of notice and trials were introduced in evidence, and it was for the court to construe them and determine whether they conferred jurisdiction to try the accused under the notice which was shown. Niblack, Benefit Soc. and Accident Ins., p. 118;

*Osceola Tribe of Red Men v. Rost,* 15 Md. 295; *Hutch-
inson v. Lawrence,* 67 How. Prac. 38.

Appellant contends that courts will not interfere with
the methods of societies in the expulsion of their mem-
bers. Such is probably the correct rule when the proced-
ure appears to have been fairly conducted in accordance
with the rules of the society. Appellant cites *Bachman
v. New Yorker etc. Bund,* 64 How. Prac. 442. That case,
however, recognizes the rule that courts will inquire into
the regularity of the proceedings to ascertain if they have
been fairly conducted in accordance with the society's
rules, and announces that, ". . . when the latter fact
is once judicially determined in a legal or equitable con-
troversy between the parties, in which an issue involving
the question has been distinctly raised, the door to fur-
ther inquiry upon that subject should be closed, . . ."
Thus judicial inquiry into the fairness of the proceedings
is fully recognized. See also: Niblack, Benefit Soc. &
Accident Ins., p. 118; *Osceola Tribe of Red Men v. Rost,
supra; Hutchinson v. Lawrence, supra; Lazensky v. Su-
preme Lodge Knights of Honor,* 31 Fed. 592; *Woodmen
of the World v. Gilliland* (Okla.), 67 Pac. 485.

Several of the cases cited by appellant relate to mailed
notices for nonpayment of dues, which involve questions
very different from a proceeding to try one upon charges
of immorality and dishonesty, for the purpose of expelling
him from membership in an honorable society. The obli-
gation to pay dues is already known to the member, and
involves the duty to be prompt in looking after them. The
case of *Hawkshaw v. Supreme Lodge Knights of Honor,*
29 Fed. 970, is cited as involving a case of insanity. It
appeared that the default in payment of dues was on ac-
count of insanity, and it was held that such was not an
excuse for nonpayment. The duty to pay dues existed in

any event under the contract, and it could not be kept alive without payment, even though the member was insane. The principle there decided was altogether different from the one involved here, where the member had regularly paid all dues under his contract, which dues had been accepted. He had therefore kept all conditions of his contract after it was made, and the procedure against him was for the purpose of avoiding the contract, which he had faithfully kept as far as payments were concerned.

The case of *Pfeiffer v. Weishaupt* (N. Y. Com. Pleas), 13 Daly 161, seems to be more directly in point with appellant's contention that, even though the adjudged party may be insane, he may be proceeded against under expulsory charges, when he has been summoned. The opinion is brief and does not enlarge upon the subject in hand. It simply holds that a lodge may proceed against one who has not been adjudged a lunatic. Personal service of notice was, however, made in the case, which was not done here; and, as we have already intimated, it became a question for the court whether a simple mailed notice met the requirements of the case, under the laws of appellant society, when such serious charges were involved, when the accused was insane, and especially when, before the hearing upon the charges, knowledge was brought to the charging body that the accused was claimed to be not only physically unable to be present, but also positively insane. The actual adjudication of insanity followed just one month after the alleged notice was mailed, but the testimony in effect showed that his mental disqualification was as marked on the former date as on the latter.

In the case of *United Workmen v. Zuhlke,* 129 Ill. 298, 21 N. E. 789, the same defense was made which is interposed here, that the deceased had made false statements in his application for membership, and that he had been

expelled.   Expulsion was relied upon to defeat recovery.
It appeared that the party was insane at the time of the
lodge trial.   He actually appeared before the lodge in per-
son, but it was held that he was incapable of consenting to
the proceedings, and recovery was awarded.   It is true,
sufficient notice had not appeared to confer jurisdiction,
aside from the matter of consent; but, if the actual appear-
ance of one who is insane cannot confer jurisdiction, by
so much more it would seem that a mailed notice to such
an one ought not to confer jurisdiction, for further pro-
cedure after the fact of insanity has been suggested to the
charging body; at least, not until steps have been taken
to see that the rights of the accused are properly protected
by competent legal authority.

Before a society can proceed under such extraordinary
circumstances, it should, at least, clearly and unmistakably
appear that the laws of the society authorize jurisdiction
to try an insane person upon a notice which has been
merely addressed and deposited in the postoffice.   Such we
do not think appears in the laws of the appellant society;[1]
and the burden being upon appellant to show expulsion, we
think jurisdiction to try and expel was not established.

The respondent, as a mere beneficiary under the cer-
tificate, had no appeal from the decision of the local lodge

[1]NOTE—Sec. 60 of the laws of the society provided that:  "Any
member against whom charges have been preferred shall have the
right to be represented at the trial of the case by counsel.  .  .  ."

Sec. 62, relating to the notice, provided:  "When a lodge has
fixed a time for considering the charge or charges preferred
against a member, it shall be the duty of the lodge, through its
recorder, to at once notify the accused in writing, to appear at the
time appointed to plead to said charge or charges.  This notice
may be served personally or sent by mail to the last known post-
office address of the accused.  .  .  ."

This was a general law, governing the nonpayment of dues and
charges of a like character.—REP.

to a higher tribunal within the order. Her husband was dead when the notice of his attempted expulsion was received, and he could not appeal. Respondent's only recourse within the order was to submit the matter to arbitration. This she offered to do, but appellant declined to grant an arbitration. Her only recourse left was through the courts. We therefore think that, for all the foregoing reasons, the challenge to the evidence was properly overruled.

Other assignments of error are based upon exceptions to the instructions given by the court. The criticized instructions are, however, in accord with our views hereinbefore expressed, and no useful purpose would be served by specifically discussing the instructions now.

The verdict of the jury was a finding against appellant upon the facts, under either theory advanced by it here, and since we think the trial court did not err, the judgment is affirmed.

FULLERTON, C. J., and MOUNT, DUNBAR, and ANDERS, JJ., concur.

