[No. 4914. Decided April 25, 1904.]

EDWIN J. ROWE et al., Respondents, v. NORTHPORT SMELTING AND REFINING COMPANY, Appellant.[1]

APPEAL — REVIEW — MOTION FOR NEW TRIAL — NECESSITY OF. Errors relating to rulings of the trial court during the progress of the trial can be reviewed upon appeal without a motion for a new trial.

NUISANCE — DAMAGES — FUMES FROM SMELTER — EVIDENCE OF CONDITIONS AT ANOTHER PLACE. In an action for damages to an orchard and vegetation caused by fumes from a smelter, evidence of the damage done in another place under different conditions, while subject to criticism, is not prejudicial error, when the witness states that the damage was similar to that done to the plaintiffs' property.

SAME. In such a case, where there was evidence that the smelter released sulphur on plaintiffs' farm two miles distant, it is competent to prove the release of sulphur in the immediate vicinity of the smelter, in corroboration.

SAME—EXPERT EVIDENCE OF EFFECT OF SULPHUR FUMES—EXPERIMENTS BEFORE JURY—COMPETENCY. It is error, in examining expert witness as to the effect of sulphuric acid, to permit experiments to be made before the jury with some substance when there is no proof as to what the substance is, and none that the elements which combined to produce the experimental results were the same as combined to produce the injury to plaintiffs' farm, or that there was any similarity of conditions.

SAME—DAMAGES SINCE COMMENCEMENT OF ACTION—INSTRUCTIONS WITHOUT EVIDENCE ON POINT. In an action for damages to plaintiffs' premises by fumes from a smelter, commenced by the service of a summons in August, in which the complaint was not filed until December, and in which there was no evidence as to the damage sustained from August to December, it is error to instruct the jury to assess damages sustained during the two years next preceding December as the date of the commencement of the action, since the action was commenced when the summons was served.

SAME—INSTRUCTIONS—WAIVER OF ERROR—SUFFICIENCY OF EXCEPTION. The objection to such an instruction is not waived by

[1]Reported in 76 Pac. 529.

failing to object to a preliminary statement of tho court that the date of filing the complaint would be considered as the date of commencing the action, where timely exception was taken to the instruction after retirement of the jury.

Appeal from a judgment of the superior court for Stevens county, Richardson, J., entered April 13, 1903, upon the verdict of a jury rendered in favor of the plaintiff's, after a trial on the merits, for $2,000 damages to premises, caused by fumes from a smelter.    Reversed.

*Voorhees & Voorhees* and *D. H. Carey,* for appellant.

*Robertson, Miller & Rosenhaupt, J. A. Kellogg,* and *Jere Rochford,* for respondents.

HADLEY, J.—Respondents are the owners of certain lands situate near Northport, in Stevens county, Washington, and appellant is the owner and operator of a smelter located at Northport.    Respondents brought this suit against appellant and alleged, that, at all times continuously within two years last past, the appellant corporation has maintained and operated its said smelter plant; that, in connection therewith, it has caused sulphide ores to be roasted in heaps, and has smelted about one thousand tons of ore daily during said period; that the ore so smelted contained about ten per cent of sulphur, and that appellant, by causing it to be burned in the manner aforesaid, has daily caused to be released in the atmosphere of Northport about one hundred tons of sulphur; that the sulphur so released is in the form of sulphurous acid or gas; that the prevailing winds carry the fumes over and upon the lands of respondents, and that, by reason thereof, the orchard has been destroyed and the land rendered barren and unproductive.    The prayer of the complaint asks damages in the sum of $10,000.    A trial was had before the court and a jury, and a verdict was returned in favor

of respondents in the sum of $2,000.   Appellant moved for a new trial, which was denied.   Judgment was entered for the amount of the verdict, and this appeal was taken from the judgment.

The first designated assignment of error is in the following words, "The court erred in denying appellant's motion for a new trial."   Respondents urge at some length that the assignment is indefinite and cannot be considered, under rule 12 of this court, which provides that no alleged error will be considered unless the same be clearly pointed out in appellant's brief.   Numerous claims of error are, however, distinctly pointed out in the brief, all of which relate to rulings of the court during the progress of the trial.   Such rulings may be reviewed in this court even without a motion for new trial.   *Dubcich v. Grand Lodge A. O. U. W.*, 33 Wash. 651, 74 Pac. 832.   For a discussion of this point we refer to the above cited case, without repeating here.

We understand respondents to contend that, as no specific ground is mentioned in the criticized statement, quoted above, as a reason why the court erred in denying the motion for a new trial, there is therefore really nothing here to review.   Under the rule already announced by this court, all the other claims of error assigned in this case could have been reviewed on appeal, if no motion for new trial had been made.   While appellant nominally classified the statement made in its brief, concerning the ruling upon the motion for new trial, as an assignment of error, yet the statement in effect simply calls attention to the fact that the motion gave the court an opporunity to review its own rulings, and that, in denying the motion, the court erred for the reasons definitely set forth in the assignments which follow in the brief.

It is assigned that the court erred in permitting re-
spondents, over objection, to ask one Gantenbein, a witness,
the following question: "What proportion of the trees
generally in the immediate vicinity of the smelter are
dead ?"   There was evidence to the effect that the lands
of respondents are distant from the smelter, on a direct
line and over the hills, about one and three-fourths miles,
and that, following the meanderings of the Columbia river,
the distance is about two and one-fourth miles.   The pur-
pose of noting the two measurements is by reason of the
contention of appellant that the fumes and smoke from
the smelter follow the meanderings of the river, and do not
cross in a direct course to respondents' lands.   It will be
noted that the distance by way of the river is nearly one
mile greater than it is by the direct course, and that fact
is urged to emphasize appellant's claim that, after traveling
the greater distance, the sulphur fumes have become so
affected by the atmosphere that they are rendered harmless
to vegetation.   The criticized question called for the condi-
tion of trees in the "immediate vicinity" of the smelter.
Appellant urges—and testimony was afterwards introduced
to that effect—that, as the distance of the point to be
affected from the place where the gas is generated increases,
the deleterious effect decreases.   It is, therefore, contended
that the question called for the effect of the gases upon
vegetation at a point where conditions were materially
different from those which obtained at the location of
respondents' land.   The limitation in the question, "im-
mediate vicinity" was, indeed, indefinite.   For some pur-
poses the location of respondents' lands, considered from
the standpoint of either measurement above mentioned,
would be regarded as in the immediate vicinity of the
smelter. It is evident, however, from the examination of
the witness which preceded the question now under con-

sideration, that the inquiry was intended to relate to points nearer the smelter than respondents' land. The question standing alone would, therefore, seem to call for the effect of conditions different from those prevailing at respondents' land. The witness had, however, been previously interrogated, and had answered as follows:

"Q. You don't understand, Mr. Gantenbein. I mean that this dead timber, now, nearer the smelter, that was killed there, if it was killed by the fumes, when it first began to be affected by those fumes, how did it compare with the timber on the Rowe place at that time, in appearance? A. I should think very much similar."

The answer of the witness substantially stated as a fact that the effect upon timber nearer the smelter was the same as at respondents' farm, and the question criticized called for a more specific statement as to the extent of the effects upon the timber nearer the smelter. While the real question to be determined was the effect at respondents' farm, yet, from the witness' view as expressed, it followed logically that the same proportion of trees were dead in each locality, and the answer would, therefore, in effect, apply to each. The accuracy of the witness' view was to be tested by cross-examination, or by other testimony. While it would indeed have been more proper to inquire directly as to effects at respondents' farm, yet, in view of what the witness had already said, we believe that result was reached indirectly by the question.

Appellant cites and discusses a number of authorities under this assignment. Of the authorities cited, the following Massachusetts cases are particularly discussed by counsel: *Emerson v. Lowell Gas Light Co.,* 3 Allen, 410; *Lincoln v. Taunton Copper Mfg. Co.,* 91 Mass. 181; *Kelliher v. Miller,* 97 Mass. 71; *Hawks v. Charlemont,* 110 Mass. 110; *Campbell v. Russell,* 139 Mass. 278, 1 N. E.

345. Without reviewing all the cases cited, we will observe that, in each of the above cases, the offered evidence was rejected, and it was held that it was not error. Under the authorities cited by appellant, if the objection to this evidence had been sustained in the case at bar, we should probably have held that it was not error; but, inasmuch as it was allowed to go to the jury, we are disposed to the view that, when the whole testimony of the witness is considered together, the criticized portion thereof did not have such prejudicial effect as requires the reversal of the case upon this ground.

Several assignments of error, involving somewhat the same principle as above discussed, relate to questions asked the witness Sterrett, concerning the effect of the smelter fumes at his farm. The record shows that his farm is about one mile from the smelter, while that of respondents is near twice that distance by the direct course. The first objection to the questions asked this witness was when he was asked to tell the jury to what extent his strawberry crop was affected by the smelter fumes. The objection was made on the ground that the witness' farm is nearer the smelter than that of respondents, and that the condition of the gases at the two places was not the same. Objection was also made to other questions upon the same ground. This witness, in the course of his testimony, showed much familiarity with respondents' farm. He also testified that the trees at respondents' place were not quite as dead as those immediately around Northport and the smelter, but that they showed all indications of being killed. In practical effect the answer was that results were the same in the two localities, as was true of the answer of the other witness heretofore discussed. The location of this witness' place was between the two points and, if his statement—that the extreme points were simi-

larly affected—was true, then it would seem to follow that his own place, occupying a position between the two, must have been affected in like manner.  The force of the witness' testimony was to the effect that what was true of conditions at his own place was also true at respondents' place.  As we intimated in the case of the other witness, while this indirect method of inquiring about effects at respondents' farm may not have been the most acceptable one, yet, in view of his whole testimony, we do not believe appellant's case was prejudiced thereby, so as to call for a reversal upon that ground alone.

Another assignment of error relates to the following, which appears in the record:

"Q.  Now, have you ever noticed the sidewalks in Northport after a rain, when they were smelting ores there ?  A. I have.  Q.  I will ask you to state what, if anything, you have seen on the sidewalks.  Mr. Voorhees:  I object. These sidewalks are not on Rowe's place and Rowe's place is virtually two miles away from Northport.  Objection overruled.  Exception.  A.  I have noticed it on the sidewalks, the buildings, and in my yard and garden, and have noticed it in the water barrels by the house, and have seen considerable of it at various times.  Q.  What is that?  A. I don't know, but suppose it is sulphur.  It is a yellow substance."

Standing alone there would appear to be no pertinence in merely showing the presence of sulphur upon the sidewalks and buildings in Northport, but one of the respondents had testified, that a precipitate lodged upon the roof of the house at respondents' farm; that the same also formed a scum on the water during the process of irrigation; that it was sulphur, and that it stopped the growth of vegetation.  In view of that testimony, and the claim that the sulphur at the farm came from the smelter, we think the testimony criticized under this assignment of error was competent to show that the smelter did release

sulphur, and tended to corroborate the said testimony of Mr. Rowe, one of the respondents.

A number of other distinctly assigned errors may be grouped and discussed together as involving one general principle. While the witness Terwilliger, called by appellant as an expert, was upon the stand, counsel for respondents indulged in certain experiments before the jury with what was said by counsel to be sulphuric acid. One of the counsel handed the witness a bottle containing some substance, and asked him if he could detect sulphuric acid by smell. The witness replied, "It does not look like sulphuric acid to me," giving as a reason that it was not a proper color, and he afterwards stated that it was not sulphuric acid—at least, not chemically pure. Counsel dipped a wooden stick into the substance and said, "I will show you this stick. Explain to the jury, as that stick turns black in their presence, just the chemical action that goes on on that wood." The record then shows the following:

"Mr. Voorhees: We object. We do not know what this is in this bottle. Mr. Robertson: I will prove it. Objection overruled. Exception. We except on the ground that there has been no proof whatever as to what this is; just a mere statement of counsel."

Afterwards, over objection, the blackened stick was admitted in evidence. No proof was made as to what was the substance contained in the bottle. Appellant's counsel objected as follows:

"Mr. Voorhees: I object. I make the point that this witness has testified that sulphuric acid in this form—if this is sulphuric acid—is not the same, and will not have the same effect, which is made by the combination of $SO_2$ with the air and the water. There is affirmative evidence to that effect. Consequently the conditions are not the same. Consequently this piece of wood is not evidence.

This offer is incompetent, irrelevant and immaterial. Objection is overruled. Exception."

Thereafter counsel asked the witness what effect sulphuric acid has on leaves, and at the same time handed him a pine branch, after having poured thereon something from a bottle. Objection was again made that there was no proof that the substance in the bottle was the same as that thrown off from the roasting heaps of ore at the smelter. Again, counsel asked the witness the effect of sulphuric acid on cloth, and at the same time poured some substance from a bottle upon a piece of cloth. Objection was again made, but it was overruled.

We think the court erred in permitting the experimentation in the manner in which it was conducted. In the first place, it was not established that the substance in the bottle was sulphuric acid; and, in the next place, assuming that it was, the effect of the ocular demonstration before the jury may have been to so impress them that they were led to conclude that the acid thrown off from the roasting heaps, after traveling about two miles and becoming dilute by its contact with air, was as powerful and deadly in its effect as the substance before them appeared to be, when poured immediately from the hitherto closed bottle upon the stick, branch, and napkin. The court permitted the continuation of the experiments before the jury, notwithstanding the witness declared, concerning the contents of the bottle, "We have nothing like that at the smelter." There being no proof to show that the elements which combined to produce the experimental results before the jury were the same as those combined at respondents' farm, we think the court erred, and that appellant's rights were thereby prejudiced before the jury.

There must, at least, be identity of conditions before an experiment, or evidence of an experiment, can be sub-

mitted to a jury, as tending to prove the issue before them. *Klanowski v. Grand Trunk R. Co.*, 64 Mich. 279, 31 N. W. 275; *Newbold v. Mead*, 57 Pa. St. 487. It has been held that the practical difficulty of bringing about experimental conditions, in all respects identical with those immediately before the jury, has the effect to render such testimony more or less unreliable; that such experiments, their results, and the inferences drawn from them by witnesses, are matters collateral to the issue before the jury, and that many collateral issues are liable to arise when an attempt is made to prove identity of conditions. *Libby v. Scherman*, 146 Ill. 540, 34 N. E. 801, 37 Am. St. 191; *Chicago etc. R. Co. v. Champion*, 9 Ind. App. 510, 36 N. E. 221, 53 Am. St. 357; *Wise v. Ackerman*, 76 Md. 375, 25 Atl. 424. However, when substantial or reasonable similarity of conditions has been made to appear, it has been frequently held that evidence of experiments is admissible. 12 Am. & Eng. Enc. Law (2d. ed.), 408, and cases cited. We therefore desire that we shall not be understood as holding that evidence of experiments may never be valuable or proper; but, rather, that in any event such a similarity of conditions must be made to appear as will insure a reasonably just and accurate comparison.

Other errors are assigned upon the court's instructions, and upon the refusal to instruct as requested by appellant. We believe no prejudicial error is shown under the several assignments concerning the instructions, except in one particular. The court instructed that respondents could recover for such damages as had been caused by appellant within the period of two years next before the commencement of the action, and then specifically limited the time to two years next before December 22, 1902. Counsel for both parties, during the entire examination

of witnesses, treated the action as having been commenced in August, 1902. All the testimony was confined to a period prior to that time, and no evidence was introduced relating to the period between August and December, 1902. The complaint was not filed until December 22, 1902, but it is conceded all through the case, that the summons was served in August of that year. Under § 4869, Bal. Code, the action was commenced when the summons was served, and it is, therefore, manifest that the time limit stated by the court in its instructions was incorrect, and included a period of about four months after the commencement of the action, covering which there was no evidence before the jury. Respondents, however, contend that appellant should not now be permitted to raise this question, because of what appears in the record. Just before the instructions to the jury the following appears:

"The evidence being concluded and the respective counsel for the plaintiffs and defendant having concluded their arguments to the jury, and the court being about to instruct the jury and to define the issues in the case to the jury, stated that, in instructing the jury he would treat the 22d day of December, 1902, the date of filing of the complaint, as the date of the commencement of the action; and that no objection was at that time interposed by counsel on either side."

Respondents urge that, as appellant did not at that time object, it should not be heard to do so now. From anything which appears in the record, the court unqualifiedly announced that it would instruct the jury that the action was commenced on the date the complaint was filed. An exception to an erroneous instruction could not have been taken until it had been given to the jury. Moreover, appellant timely excepted to the instruction, after the retirement of the jury and before a verdict was returned, but the error was not corrected by the court. Appellant, hav-

ing thus given an opportunity for the correction of the instruction, did not waive the point, and, since the error was not corrected, it remained before the jury. What effect the instruction may have had upon the amount of the verdict it is, of course, impossible to determine.

The foregoing reviews the principal points urged, and we believe it is unnecessary to further extend the discussion. For the reasons assigned, the judgment is reversed and the cause remanded with instructions to the trial court to grant a new trial.

FULLERTON, C. J., and MOUNT and ANDERS, JJ., concur.

DUNBAR, J. (concurring).—I concur in the majority opinion on the ground stated—that it was not established that the substance in the bottle was sulphuric acid. Of course, it would be error to permit the introduction of evidence showing the effect of acid different from that which was thrown off from the roasting heaps at the smelter. But I do not agree with the statement that, assuming that the acid tested was the same as that which was thrown from the roasting heaps, error was committed by introducing evidence of its effect upon vegetation, for the reason that the conditions were not the same. Of necessity the conditions would be different after the transmission of the acid through the air for two miles to the farm of the respondents, and it seems to me that, if the rule announced were adopted, it would prevent the respondents from proving that the effects on the vegetation at their place were brought about through the agency of the acid emanating from the smelter works. If plaintiffs had proved the condition of the vegetation and the finding thereon of a deposit, and it was shown by the defense that the acid which was found upon the vegetation

was harmless, and such proof, if true, would have been admissible by experiments offered by the defendant showing that the acid, before it was diluted by the air, would not have a deleterious effect upon vegetation, plaintiffs' case would fail. So that, it seems to me, it was competent to show primarily the effect of sulphuric acid on vegetation; and the diluting effect of the air, in the transmission of the acid for two miles or more, would be a subject for explanation on cross-examination or otherwise, and a deduction which must necessarily be made by the jury in consideration of all the facts proven, viz., the difference in the conditions, the distance traveled, the effect of the air on the acid, and any other circumstance which was pertinent and explanatory.