[No. 11258. Department Two. July 29, 1913.]

C. A. Birch et *al.*, *Respondents*, v. W. R. Abercrombie et *al.*, *Appellants.*[1]

Municipal Corporations—Use of Streets—Automobiles—Negligence—Contributory Negligence—Question for Jury. The negligence of the driver of an automobile in running down a pedestrian, and the contributory negligence of the plaintiff, is for the jury, where the plaintiff looked before starting across the street and the street was clear of traffic for one block and no car in sight, and the evidence was conflicting as to whether the driver sounded a warning until just before striking the plaintiff.

Master and Servant—Liability to Third Persons—Ownership of Automobile—Presumptions. The ownership of an automobile is *prima facie* proof that it was in the possession of, and was being driven for, the owner.

Same. Where an automobile, purchased by defendant for the use of his family, was driven by his daughter for her own pleasure, the presumption that it was in his possession and used in his business is not overcome by evidence of mere advice and the expression of a preference on his part that she should not drive it; especially where, answering written interrogatories, he stated that she was permitted to, and had, run it on different occasions.

[1]Reported in 133 Pac. 1020.

SAME—INJURY TO THIRD PERSONS—CHILD AS AGENT OF PARENT—
DRIVING AUTOMOBILE—SCOPE OF EMPLOYMENT. The owner of an auto-
mobile purchased for the use of his family, is liable to third persons
for injuries sustained through the negligent driving of his daughter
using the car for her own pleasure by his consent, express or implied;
not by reason of the relation of parent and child, but through the re-
lation of agency or service; since she was using it for the purposes
for which it was kept, and in every just sense, in his business as his
agent; and it is immaterial that no other member of the family was
present.

TRIAL—RECEPTION OF EVIDENCE—MISCONDUCT OF COUNSEL—FACT OF
LIABILITY INSURANCE. In an action for personal injuries, it is rever-
sible error for plaintiff's counsel to unnecessarily inject into the rec-
ord evidence of a conversation in which the defendant admitted that
he carried liability insurance and hence could not settle for the in-
jury, and the error is not cured by striking out the evidence; espe-
cially where a second conversation was detailed with the apparent
purpose of keeping the matter before the jury, which the court re-
fused to strike out.

APPEAL—REVIEW—MOTION FOR NEW TRIAL—NECESSITY. Error in
refusing to discharge the jury because of improper conduct of counsel,
will be reviewed on appeal from the judgment without any formal
motion for a new trial.

Appeal from a judgment of the superior court for Spokane
county, Sessions, J., entered March 14, 1913, upon the ver-
dict of a jury rendered in favor of the plaintiffs, in an action
for personal injuries. Reversed.

*Cannon, Ferris & Swan* and *Walter A. White*, for appel-
lants.

*Smith & Mack*, for respondents.

ELLIS, J.—This is an action to recover damages for in-
juries sustained by the plaintiff, Julia M. Birch, by being
struck by an automobile owned by the defendants W. R. Ab-
ercrombie and wife, which was at the time being driven by
their daughter, the defendant Frances Abercrombie. The
trial resulted in a verdict and judgment in favor of the plain-
tiffs, and against all of the defendants, for $2,000 and costs.
The evidence, so far as necessary, will be noticed in the dis-
cussion. At appropriate times, the defendant Frances Aber-

crombie moved for a directed verdict, for a new trial and for judgment notwithstanding the verdict. The defendants W. R. Abercrombie and wife moved for directed verdict and for judgment notwithstanding the verdict. All of these motions were overruled, and each of the defendants appealed.

I.    It is first contended, on behalf of all of the appellants, that the evidence was insufficient to establish any negligence on the part of Frances Abercrombie, and that in any event the respondent Julia M. Birch was guilty of contributory negligence as a matter of law. We shall not attempt an exhaustive review of the evidence. The following will suffice: It is admitted that the appellant Frances Abercrombie was driving the automobile north on Jefferson street in the city of Spokane, and that, near the intersection of that street with First avenue, the machine struck the respondent Julia M. Birch, who was crossing Jefferson street diagonally from west to east; that Jefferson street is sixty feet wide, and that Mrs. Birch was struck at a point about twelve feet from the east curb of the street. It seems to be admitted, also, that Mrs. Birch's hearing was slightly impaired prior to the accident. She testified that, before leaving the curb on the west side of the street, she looked south on Jefferson street and saw nothing, the street being perfectly clear for a distance of about a block; that she had no intimation of the approach of the automobile until the ringing of the bell the instant before she was struck. Another witness testified, in substance, that he head the bell ring violently just at the time the woman was struck, but heard no other warning, and stated that, if the bell had been sounded before that time, he thought he would have remembered it, as he was coming down the street in the same direction as the automobile. Evidence was introduced on behalf of the appellants to the effect that the automobile was running slowly at the time of the accident, and that the bell was sounded several times before Mrs. Birch was struck. Upon this conflict of evidence, the questions of Miss Abercrombie's negligence in failing to sound the bell, and of

Mrs. Birch's contributory negligence in failing to look south after leaving the west curb, were clearly for the jury. We have so held repeatedly on facts essentially parallel. *Ludwigs v. Dumas*, 72 Wash. 68, 129 Pac. 903; *Hillebrant v. Manz*, 71 Wash. 250, 128 Pac. 892; *Lewis v. Seattle Taxicab Co.*, 72 Wash. 320, 130 Pac. 341.

II.   It is contended on behalf of appellants W. R. Abercrombie and wife that, even conceding that a case was made as against the daughter, the evidence exonerates them from liability in that the automobile was at the time in use by the daughter for a purpose of her own, and not as their servant or agent.  The jury in addition to the general verdict, found in answer to special interrogatories: (1) That Frances Abercrombie was at the time of the accident driving the machine for her own pleasure; (2) that she was not driving the machine without the knowledge or consent of her parents express or implied; (3) that her parents had not prior to the accident ordered or directed her not to drive the machine.  The appellants contend that the last two findings are without support in the evidence.  This contention ignores the admitted ownership of the automobile by the appellants W. R. Abercrombie and wife.  It is well established that, in cases of this kind, where the vehicle doing the damage belonged to the defendants at the time of the injury, that fact establishes *prima facie* that the vehicle was then in the possession of the owner, and that whoever was driving it was doing so for the owner.  We have repeatedly so held.  *Knust v. Bullock*, 59 Wash. 141, 109 Pac. 329; *Kneff v. Sanford*, 63 Wash. 503, 115 Pac. 1040; *Burger v. Taxicab Motor Co.*, 66 Wash. 676, 120 Pac. 519.  The burden was thus cast upon the appellants to overcome this presumption by competent evidence and it was for the jury to say upon such evidence whether the burden had been sustained.  There was evidence that the automobile was purchased by the appellant W. R. Abercrombie for the use of his family.  He testified that it was sent, in the morning of each day, from the garage where it was kept, to

his home for that purpose and taken away in the evening. On June 5, 1912, both W. R. Abercrombie and his wife were away from home, and the daughter, the appellant Frances Abercrombie, entertained a number of friends at luncheon. She was taking them home in the automobile when the accident happened. Both W. R. Abercrombie and his wife testified that the daughter was not strong, and that running the machine was a tax on her nerves, and that, for that reason, sometime before the accident, they had advised her not to run the machine, and told her that they would rather she would not run it. Mr. Abercrombie testified that this was "emphatic and positive, in the shape of an order from parent to child." This last statement was obviously a conclusion, and hardly sustained by the words actually used as testified to by him. In rebuttal, the respondents introduced certain interrogatories propounded by them to the appellant W. R. Abercrombie, and his answers thereto. Two of his answers read as follows:

"Answering interrogatory Number 3, these defendants state that Frances Abercrombie was permitted to use the electric vehicle owned by them at different times."

"Answering interrogatory Number 4, these defendants state that Frances Abercrombie had used the electric vehicle owned by them on some occasions prior to June 5, 1912."

In view of these answers to the written interrogatories, and in view of the fact that the automobile was being used for the very purpose for which it was purchased and kept, and in view of the presumption attending admitted ownership, we cannot say that the last two findings of the jury are not supported by competent evidence. The presumption attending ownership was not overcome, as a matter of law, by evidence of mere advice and an expression of preference on the part of the parents some weeks before that the daughter should not drive the machine, especially in view of the fact that antecedent knowledge and consent of the parents to her use of the machine were admitted by the answers to the interrogatories.

There being competent evidence from which the jury might reasonably find as it did, we must assume that Frances Abercrombie had been permitted the use of the machine and that she was at the time of the accident using it with the consent of her parents.

This reduces the consideration of the appellants' contention under this head to answering a single question: If Frances Abercrombie was driving the automobile for her own pleasure, were the father and mother, notwithstanding that fact, liable for the injury to the respondent resulting from her negligence under the other evidence adduced?

It is conceded that an automobile is not an agency so dangerous as to render the owner liable for injuries to travelers on the highway inflicted thereby while being driven by another, irrespective of the relation of master and servant or agency as between the driver and the owner, and we have so held. *Jones v. Hoge,* 47 Wash. 663, 92 Pac. 433, 125 Am. St. 915, 14 L. R. A. (N. S.) 216. This concession eliminates any necessity to review the following authorities, cited by the appellant, in which the driver was either not in any sense the agent or servant of the owner, or though a servant, was acting for himself and obviously outside of the scope of his employment and not in connection with the owner's business. These authorities are cited only to the point conceded. *Jones v. Hoge, supra; Robinson v. McNeill,* 18 Wash. 163, 51 Pac. 355; *Slater v. Advance Thresher Co.,* 97 Minn. 305, 107 N. W. 133; *Lotz v. Hanlon,* 217 Pa. 339, 66 Atl. 525, 118 Am. St. 922, 10 L. R. A. (N. S.) 202; Huddy, Automobiles, p. 95.

It must also be conceded that a parent is not liable for the torts of his child solely on the ground of relationship. The liability, if any exists, must rest in the relation of agency or service. This eliminates any necessity for a review of the following authorities, cited by the appellant, only in support of that point. *Mirick v. Suchy,* 74 Kan. 715, 87 Pac. 1141; *Chastain v. Johns,* 120 Ga. 977, 48 S. E. 343, 66 L. R. A. 958; *Kumba v. Gilham,* 103 Wis. 312, 79 N. W. 325.

This leaves only two cases cited by the appellant under this head for our consideration. They are *Reynolds v. Buck*, 127 Iowa 601, 103 N. W. 946, and *Doran v. Thomsen*, 76 N. J. L. 754, 71 Atl. 296, 131 Am. St. 677, 19 L. R. A. (N. S.) 335. The case of *Reynolds v. Buck* is clearly distinguishable from the case in hand on the facts. In that case the defendant, a dealer in automobiles, decorated one for use in a parade, and after the parade directed that the machine which stood in front of the store be taken inside, and he then left. His son, who was employed as a clerk and who had been given a holiday, coming upon the machine where it stood, invited a lady friend to ride. While he was driving, the plaintiff's horse took fright at the machine and the plaintiff was injured. It was held that the defendant was not liable, on the ground that the son was using the automobile for his own purpose without the knowledge or consent of the father and in a matter wholly disconnected with the father's business. In the case before us the automobile was purchased and kept for the use of the family. It was customary for the members of the family to drive it at their pleasure. It was intended for no other purpose. At the time of the accident, it was being so used, as the jury found on what we must hold competent evidence, with the knowledge and consent of the appellants W. R. Abercrombie and wife. The distinction from the *Buck* case is plain.

The case of *Maher v. Benedict*, 123 App. Div. 579, 108 N. Y. Supp. 228, cited in *McNeal v. McKain, infra*, seems to have been decided on the same ground though the facts would hardly seem to justify it. The general rule of liability, however, as there stated, distinctly sustains a liability in the case here. The court said:

"Liability arises from the relationship of master and servant, and it must be determined by the inquiry whether the driving at the time was within the authority of the master, in the execution of his orders, or in the doing of his work."

The New Jersey case, *Doran v. Thomsen*, is not distinguishable on the facts from the case before us. The father owned the automobile, kept it on his premises, and the daughter used it with his knowledge and consent at her pleasure. While heartily subscribing to the view there expressed, "that the mere fact of the relationship of parent and child would not make the child the servant of the defendant," we think the opinion unsound in that it ignores the agency induced by the fact, independent of that relationship, that the daughter was using the machine for the very purpose for which the father owned it, kept it, and intended that it should be used. It was being used in furtherance of the very purpose of his ownership and by one of the persons by whom he intended that purpose should be carried out. It was in every just sense being used in his business by his agent. There is no possible distinction, either in sound reason, sound morals, or sound law, between her legal relation to the parent and that of a chauffeur employed by him for the same purpose. The fact that the agency was not a business agency, nor the service a remunerative service, has no bearing upon the question of liability. *McNeal v. McKain*, 33 Okl. 449, 126 Pac. 742. In running his vehicle, she was carrying out the general purpose for which he owned it and kept it. No other element is essential to invoke the rule *respondeat superior*. We think that the instruction which is criticized in the *Doran* case is, in itself, a complete answer to the opinion. It declared the use of the machine for the purpose for which it was owned, by the person authorized by the owner to so use it, a use in the owner's business. It seems too plain for cavil that a father, who furnishes a vehicle for the customary conveyance of the members of his family, makes their conveyance by that vehicle his affair, that is, his business, and any one driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is his agent. The fact that only one member of the family was in the vehicle at the time is in no sound sense a differentiating circumstance ab-

rogating the agency. It was within the general purpose of the ownership that any member of the family should use it, and the agency is present in the use of it by one as well as by all. In this there is no similitude to a lending of a machine to another for such other's use and purpose unconnected with the general purpose for which the machine was owned and kept.

An examination of the authorities cited, and an independent search, induces the belief that the *Doran* case stands practically alone. Some courts have sought on slight circumstances to distinguish it. One has frankly criticized it. We have found none which followed it. In *Stowe v. Morris*, 147 Ky. 386, 144 S. W. 52, 39 L. R. A. (N. S.) 224, the supreme court of Kentucky, holding a father liable on closely analogous facts, used the following language:

"In the first place, it may be said that a considerable part of the discussion of counsel is addressed to the idea that, even though the son was generally the agent or servant of the father in the operation of the car, the father is not liable under the facts stated here, because the son was engaged at the time in an enterprise of his own,—the seeking and giving of pleasure to himself, his sister, and their friends, upon an excursion of his own,—in which the father had no interest, and which was not in the line or scope of the son's employment. The question ordinarily is a vital one in cases of this character; but it is of no consequence here. For the only ground upon which the father can be held answerable for this act of his son excludes the idea of an independent venture, under the facts detailed. That ground is, as contended for by the appellee, that the machine was bought and operated for the pleasure of the family; that, at the time of the accident, the son was engaged in carrying out the general purpose for which the machine was bought and kept; and that, as he took it out at the time in pursuance of general authority from his father to take it when he pleased, for the pleasure of the family and himself as a member of it,—the purpose for which it had been bought,—he was engaged in the execution of his father's business, i. e., the supplying of recreation to the members of the father's family. . . . So, in the case at

bar, the father had provided his family with this car as a means of recreation and amusement; and the son, in the use of the car for that purpose, was not performing an independent service of his own, but was carrying out what within the spirit of the matter, was the business of the father."

Referring to the *Doran* case, the court says:

"It is true that there is authority of a most excellent character in direct conflict with the views which we have set out. Notable among the cases are those of *Doran v. Thomsen,* 76 N. J. L. 754, 71 Atl. 296, 19 L. R. A. (N. S.) 335, 131 Am. St. Rep. 677, and *Maher v. Benedict,* 123 App. Div. 579, 108 N. Y. Supp. 228; but the conclusion reached by us is sustained both by the case of *Lashbrook v. Patten,* from this court, and by what we believe to be the sounder argument."

In *Daily v. Maxwell,* 152 Mo. App. 415, 133 S. W. 351, another case analogous to that in hand, except in its reference to the minority of the offending child, which fact we deem immaterial, the court said:

"The evidence discloses that the machine was devoted to the use of the family of which Ernest was a member. It was a pleasure vehicle and when used for the pleasure of one of the minor children of the owner, how can it be said that it was not being used on business of the owner?"

In *Marshall v. Taylor,* 168 Mo. App. 240, 153 S. W. 527, the same court, referring to the *Maxwell* case, said:

"But further we held that the use of the car by the minor son for his own pleasure and with the consent of his father, the owner, was one of the uses for which the vehicle was kept and, therefore, was a part of the service for which the owner had authorized the boy to run the car as his servant. The only difference between that case and this is that here the young man had attained his majority, was *sui juris,* and his father owed him no duty of parentage, and, of course, was under no obligation to provide him with means of pleasure and recreation. We do not think this fact is determinative of the question of defendant's liability. The real question at issue is not that of the legal duty defendant owed his son, but is whether or not the son was the agent of his father in running the car. Frequently fathers continue not only to sup-

port their children after the latter have become *sui juris*, but to provide them, as members of the family, with the means of recreation and pleasure. This car was provided by defendant for the use of his immediate family. He contemplated and intended that his son should enjoy it in common with other members of the family. When in such use it was as much in his service as it would have been had it been occupied by his wife, his daughter, his mother, or his guest. We conclude that the young man was not a mere servant using his master's vehicle for his own purpose but was the agent of his father operating the car for one of the purposes of its intended use."

In *McNeal v. McKain*, 33 Okl. 449, 126 Pac. 742, another case of the same character, the court said:

"Vehicles and motor cars may be used, not only for the business of the master for profit, but also in his business for pleasure. If Paul, the minor son of the plaintiff in error, had been driving his father's carriage (whilst he was a member of his family) in which were contained his sister and a guest of his father's house, the same being done by him with the express or implied consent of his father, the relation of master and servant would exist, and the father would be liable for the negligent acts of the minor son whilst engaged in the driving of the carriage, and the same rule is supported by authority as to motor cars."

See, also, *Bourne v. Whitman*, 209 Mass. 155, 95 N. E. 404, 35 L. R. A. (N. S.) 701; *Moon v. Matthews*, 227 Pa. 488, 76 Atl. 219, 136 Am. St. 902, 29 L. R. A. (N. S.), 856.

We think that, both on reason and authority, the daughter in the present instance should be held the agent of her parents in the use of the automobile. Any other view would set a premium upon the failure of the owner to employ a competent chauffeur to drive an automobile kept for the use of the members of his family, even if he knew that they were grossly incompetent to operate it for themselves. The adoption of a doctrine so callously technical would be little short of calamitous.

III. The appellants insist that the judgment must be reversed for the reason that, upon the trial, the respondents

unnecessarily injected into the record evidence of a conversation between the respondent C. A. Birch and the appellant W. R. Abercrombie, in which the latter admitted that the appellants carried liability insurance, and hence could not settle for the injury and referred Mr. Birch to appellants' counsel. While the trial court, upon motion of the appellants, struck this testimony and instructed the jury to disregard it, he refused the appellants' request to discharge the jury from further consideration of the case. We think that this was error. In the nature of the case, the striking of the evidence and the instruction to disregard it cannot cure the prejudicial effect of the fact being brought to the attention of the jury. As said by the late Judge Dunbar in *Iverson v. McDonnell,* 36 Wash. 73, 78 Pac. 202, quoting with approval from *Manigold v. Black River Traction Co.,* 81 App. Div. 381, 80 N. Y. Supp. 861:

" 'The law is well settled that it is improper to show, in an action of negligence, that the defendant is insured against loss in case of a recovery against it on account of its negligence. This was expressly held in the case of *Wildrick v. Moore,* 66 Hun. 630, 22 N. Y. Supp. 1119. It is not proper to inform the jury of such fact in any manner. It is not material to any issue involved in the trial of the action, and certainly plaintiff's counsel ought not to be permitted to do indirectly what he would not be permitted to do directly. The fact that the defendant in this action was insured was brought to the knowledge of the jury as conclusively by what occurred as if the question had been answered in the affirmative, and it is evident that the question was asked and the inquiry pressed, even after the ruling of the court that it was incompetent, for the very purpose of getting such fact before the jury. Immediately before the direct question was asked, the court had ruled that the inquiry as to who Dr. Rockwell represented was incompetent, and the objection to that question was sustained, and yet plaintiff's counsel then asked the direct question, which was, in effect, a statement that there was an insurance company back of the defendant. In order to protect the defendant, its counsel was forced to object to the question, and yet by doing so, he, in effect, admitted the

fact; otherwise no objection would have been made. It is true the learned trial court properly struck out the answer, and instructed the jury not to consider it; but plaintiff's counsel improperly got the fact before the jury—a fact which he knew he was not entitled to, and which the court had just excluded by its ruling. We think this constituted error which requires a reversal of the judgment.' "

See, also, *Lowsit v. Seattle Lum. Co.*, 38 Wash. 290, 80 Pac. 431; *Stratton v. Nichols Lum. Co.*, 39 Wash. 323, 81 Pac. 831, 109 Am. St. 881. Moreover, even after this first evidence was stricken, the same witness was permitted to detail a second conversation in which the appellant W. R. Abercrombie again refused to settle and referred the witness to the appellants' counsel. Though in this connection no direct reference to the insurance was testified to, its only apparent purpose was to keep that matter before the jury. This last evidence the court refused to strike. This also was error. While counsel for appellants, in argument before this court, expressed a doubt that the appellants W. R. Abercrombie and wife, having filed no motion for a new trial, could insist upon this error, we think the statement was clearly inadvertent. The request to discharge the jury at the very time when the error was committed was in itself equivalent to a motion for a new trial. It gave evidence of absolute good faith in the objection, since the appellants, in making the demand at that time, negatived any disposition to speculate upon securing a favorable verdict notwithstanding the error while relying upon the error for a new trial on formal motion after verdict. Moreover, we have often held that, where the trial court has had an opportunity to rule upon an error claimed, it may be reviewed on appeal without a formal motion for a new trial. *Jones v. Jenkins*, 3 Wash. 17, 27 Pac. 1022; *Burns v. Commencement Bay Land & Imp. Co.*, 4 Wash. 558, 30 Pac. 668, 709; *Tingley v. Fairhaven Land Co.*, 9 Wash. 34, 36 Pac. 1098; *Carter v. Seattle*, 21 Wash. 585, 59 Pac. 500; *Sultan Water & Power Co. v. Weyerhauser Timber Co.*, 31 Wash. 558, 72 Pac. 114; *Dubcich v. Grand Lodge A. O. U. W.*, 33

Wash. 651, 74 Pac. 832; *Crooker v. Pacific Lounge & Mattress Co.*, 34 Wash. 191, 75 Pac. 632; *Rowe v. Northport Smelting & Refining Co.*, 35 Wash. 101, 76 Pac. 529. While we are loath in any case to order a new trial where the verdict of a jury is sustained by competent evidence, we are equally loath to refuse a new trial where, through respondents' fault, incompetent and essentially prejudicial matter was unnecessarily placed before the jury.

The judgment is reversed, and the cause is remanded for a new trial.

MAIN and FULLERTON, JJ., concur.

MORRIS, J., concurs in the result.