[No. 26128.  Department Two.  August 4, 1936.]

CATHERINE TEMPLIN *et al., Respondents,* v. J. FLOYD DOAN *et al., Appellants,* VERNARD FOX *et al., Defendants.*[1]

*O. R. Schumann* and *F. C. Palmer, Jr.,* for appellants.

*Harry L. Olson* and *D. V. Morthland,* for respondent.

[1]Reported in 59 P. (2d) 1110.

BEALS, J.—The defendants J. Floyd Doan and Rosella M. Doan, his wife, own and operate a grocery store in the city of Yakima. The other defendants, George Damaskos and Vernard Fox, were, during the early summer of 1935, employed in and around the grocery. The Doans owned a three-wheel motorcycle, having a side container for the carriage of merchandise, which was used in connection with the store as a delivery car. George Damaskos, then seventeen years of age and possessed of a motorcycle license, operated the car as delivery boy. Vernard Fox, then nearly sixteen years of age, worked in the grocery after school hours as roustabout.

On the evening of Saturday, June 8, 1935, and while Mr. Doan was still in his store, although he had turned the lights down, it being rather late for customers, Damaskos asked and received permission to use the motorcycle for a short while. It does not appear that the vehicle was to be used for the delivery of groceries, the evidence indicating that Damaskos requested the use of the car for the purpose of teaching his friend and associate, defendant Vernard Fox, how to operate the same. When two persons rode the motorcycle, the one other than the operator sat behind upon the rear fender, the merchandise container not being suitable for a passenger.

On the evening in question, Fox assumed the driver's position, Damaskos perching upon the rear fender in such a position that he could help Fox shift the gears and assist in driving the machine. After proceeding a short distance, Fox lost control of the machine, which ran wild and, in spite of the efforts of both boys, struck the plaintiff Catherine Templin, inflicting upon her severe injuries.

In an action for divorce which Mrs. Templin had previously brought against Leland Templin, her hus-

band, an interlocutory order had been entered, dividing the property of the parties, but because no final decree had been entered, Mr. Templin joined with Mrs. Templin in this action against Mr. and Mrs. Doan, George Damaskos and Vernard Fox, for the recovery of damages resulting from the injuries suffered by Mrs. Templin as a result of the collision with the motorcycle. The two minor defendants were represented by a guardian *ad litem*.

The action was tried to a jury, which returned a verdict in plaintiffs' favor. Defendants Doan moved for judgment in their favor notwithstanding the verdict, and in the alternative for a new trial. These motions having been denied, judgment was entered upon the verdict, from which defendants Doan have appealed. Error is assigned only upon the denial of the two motions above referred to.

Appellants contend that the record contains no evidence, and that no reasonable inference can be drawn from the evidence, justifying the verdict against appellants upon the theory that the two employees of appellants were, in operating the motorcycle, within the scope of their employment. Appellants also argue that the record contains no evidence justifying a verdict against appellants upon the theory that the motorcycle was being driven by an incompetent operator. In their brief, appellants discuss these two questions together, vigorously contending that the two boys were, at the time of the accident, not acting within the course of their employment. There is no question of contributory negligence in the case, nor do appellants attack the amount of the verdict in Mrs. Templin's favor.

Respondent Leland Templin, who testified that he was not interested in the result of the action, stated that, in a conversation with Mr. Doan after the acci-

dent, the latter had stated that he was at least willing that defendant Fox should learn to drive the motorcycle, and that he was aware that both boys had been in the habit of riding the car together.

In the examination of George Damaskos, called by respondents as an adverse witness, the following occurred:

"Q. Did you have any conversation with Mr. Doan prior to taking the motorcycle? A. I asked him if I could borrow it, and he said I could. Q. Do you remember your exact question you put to Mr. Doan? A. No, not exactly. I remember asking for it. Q. Did you say anything to Mr. Doan at that time, that you were going to teach Mr. Fox how to drive? A. I thought I did, but I could not be sure I did. Q. What is your best recollection now? A. I am not positive. Q. You might have asked him that? A. Yes. Q. And the thought in your mind now is that you did ask him that? A. I am not sure whether I did or not. I thought I asked him but I am not sure. Q. What did Mr. Doan say when you told him you were taking the motorcycle? A. He said 'All right.' "

Mr. Doan testified that he knew that occasionally the boys rode the motorcycle together, and that on the evening of the accident, when he told Damaskos that he could borrow the motorcycle, he assumed that both boys expected to ride it. In response to a question as to whether or not, when Damaskos asked for the machine, he stated that he was going to teach Fox to drive it, Doan replied that he did not recall such a statement, and that, as far as he personally was concerned, it was matter of indifference to him whether Fox drove the motorcycle.

Appellants cite many cases decided by this court, in which it has been held that, upon the facts of each case, one driving a motor vehicle belonging to his employer was not, at the particular time in question, acting within the scope of his employment.

In the case of *McQueen v. People's Store Co.*, 97 Wash. 387, 166 Pac. 626, this court used the following language:

"While no decisive test can be given for determining whether or not a given act is within the scope of a servant's employment, it is apparent from all the authorities that the act complained of must have been done while the servant was engaged in doing some act under authority from his master; not that, while engaged in the act, he is employed in the master's business; but the act must have been in the furtherance of the master's business and such as may be fairly said to have been either expressly or impliedly authorized by the master. Wood, Master and Servant (2d ed.), § 307. When the servant is authorized to do the act, the master is liable for its performance. He cannot excuse himself because an authorized act was improperly or unlawfully performed. In other words, so long as the thing the servant is doing is in the furtherance of the master's business, the master must answer for the manner in which the act is done."

As to the matter of appellants' liability upon the theory that, at the time Mrs. Templin was injured, the motorcycle was being driven by an incompetent operator, appellants cite the case of *Jones v. Harris,* 122 Wash. 69, 210 Pac. 22, in which this court, considering a somewhat similar question, said:

"The liability in such instances rests upon the combined negligence of the owner and of the operator; negligence of the one in intrusting the automobile to an incompetent person, and of the other in its negligent operation. Since, therefore, the respondent's cause of action was based upon the exception to the general rule, it was incumbent upon him to prove by substantial evidence, in order to justify a verdict in his favor, (1) that the appellants loaned or intrusted their automobile to Steffer; (2) that Steffer was so far reckless, heedless and incompetent in the operation of automobiles as to render an automobile in his hands a dangerous instrumentality; (3) that the ap-

pellants knew of the incompetency of Steffer at the time they intrusted him with the automobile; and (4) that the respondent was injured by reason of the negligent operation of the automobile by Steffer.''

In the case at bar, Mr. Doan testified that he knew Fox was not able to drive the motorcycle. Fox testified that Mr. Doan had told him not to drive the machine. Mr. Doan testified that he had not instructed Damaskos to teach Fox how to drive.

Respondents rely upon the testimony above referred to, relating to the conversation between Damaskos and Mr. Doan at the time permission was given the former to borrow the motorcycle, together with Mr. Templin's testimony as to his conversation with Mr. Doan, which, although denied by the latter, if material, presented, in so far as any question of veracity is concerned, a question for the jury.

Appellants admit that all the testimony in the case concerning the use of the motorcycle at the time of the injury was given by interested witnesses. This court has repeatedly held that, when it is admitted that the vehicle causing an injury is owned by a defendant, and was at the time of the accident operated by the defendant's employee, the presumption arises that such operation was within the scope of the driver's employment. *Knust v. Bullock,* 59 Wash. 141, 109 Pac. 329; *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59; *Griffin v. Smith,* 132 Wash. 624, 232 Pac. 929. We have also held that, when the presumption above referred to has become operative, the burden rests upon the owner to overcome such presumption by competent evidence. *Samuels v. Hiawatha Holstein Dairy Co.,* 115 Wash. 343, 197 Pac. 24; *Steiner v. Royal Blue Cab Co.,* 172 Wash. 396, 20 P. (2d) 39.

As to when it should be held, as matter of law, that

the presumption has been overcome, this court has distinguished between the testimony of interested and disinterested persons in the cases of *Kneff v. Sanford,* 63 Wash. 503, 115 Pac. 1040; *Moore v. Roddie,* 103 Wash. 386, 174 Pac. 648; *Mitchell v. Churches,* 119 Wash. 547, 206 Pac. 6, 36 A. L. R. 1132; *Vernarelli v. Sweikert,* 123 Wash. 694, 213 Pac. 482; *Feldtman v. Russak,* 141 Wash. 287, 251 Pac. 572; *McMullen v. Warren Motor Co.,* 174 Wash. 454, 25 P. (2d) 99.

As to the presumption that, in case the ownership of the vehicle and the employment of the driver be proved or admitted, it be considered as establishing a *prima facie* case that the driver, at the time of the wrongful death, was acting in the scope of his employment, it is stated in 5 Wigmore on Evidence (2d ed.), p. 502, § 2510a, as follows:

"This connection, though often virtually beyond dispute, is a matter of which the plaintiff has usually scanty means of evidence as compared with the defendant. It is therefore a fit subject for presumptions based on common experience, and such presumptions are often recognized. . . .

"Where damage is done by the tortious act of the driver of a vehicle, and the injured person sues the owner of the vehicle, who was not the driver, it is a necessary part of the plaintiff's case that the driver was an agent of the owner and was acting at-the time within the scope of his employment. May these two facts be presumed from the fact of ownership? The answer should be affirmative, if we consider the relative facility of proof as between the parties, the ordinary habits of owners of vehicles, and the wisdom of placing the risk of not obtaining evidence upon the person who owns a valuable and dangerous apparatus and therefore should take special precautions against its misuse by irresponsible persons."

Examination of the record convinces us that the evidence presented before the trial court brings this

case within the rule of the authorities above cited, and made a case upon which the jury was rightly required to pass. The jury having found in favor of respondents, all disputed questions of fact are resolved in respondents' favor. It cannot be held as matter of law that the verdict is not supported by competent evidence. · Neither can it be held that the trial court committed reversible error in denying appellants' motion for judgment in their favor notwithstanding the verdict and in overruling their motion for a new trial.

The judgment appealed from is accordingly affirmed.

MILLARD, C. J., BLAKE, MAIN, and STEINERT, JJ., concur.