[No. 29176. *En Banc.* March 16, 1944.]

FLORENCE DAVIS *et al., Respondents,* v. D. E. BROWNE *et al., Appellants.*[1]

[1]Reported in 147 P. (2d) 263.

*Paine, Lowe, Davis & Russell,* for appellants.

*Davis, Heil & Davis* and *Robertson & Smith,* for respondents.

Steinert, J.—Plaintiffs, Florence Davis, Arthur W. Davis, Jr., Ann Popkes, and Minnie Mae Gossett, joined in bringing an action to recover from the defendants, D. E. Browne and Anna C. Browne, husband and wife, damages for the impairment of an automobile owned by Florence Davis and for personal injuries sustained by the other three plaintiffs, resulting from a collision between the Davis car and an automobile owned by the defendants. The cause was tried to the court without a jury. The court made findings of fact from which it concluded that each of the plaintiffs was entitled to a recovery in a fixed sum. Judgment was entered accordingly, and defendants appealed.

At the time of the accident here involved, the respondent Mrs. Florence Davis was the owner of a four-door Dodge sedan. Her son, respondent Arthur W. Davis, Jr., who was about twenty-seven years of age and to whom we shall hereinafter refer simply as Davis, was in possession of the car on the occasion in question and was driving it at the time of the collision. Accompanying him were respondent Miss Ann Popkes, his fiancee (now his wife), and Mr. Joseph M. Eisenzimmer, all three of whom were occupying the front seat of the automobile, and respondent Miss Minnie Mae Gossett, Mrs. Edna Eisenzimmer, wife of Joseph M. Eisenzimmer, and Mrs. Margaret Eisenzimmer, who were sitting in the rear seat.

The other automobile involved in the accident was a 1939 Buick sedan, owned by appellants, D. E. Browne and Anna C. Browne, husband and wife. On the evening in question, their son, Robert W. Browne, twenty-one years of age, was in possession of the car and had been driving it immediately prior to the collision. He was accompanied at the time by five companions, three young ladies and two young men.

Three of the party were occupying the front seat, and three the rear seat, of the automobile.

Each of these two groups of persons had been spending the evening of December 31, 1941, together in celebrating the advent of the new year. Although the two parties had been at the same place of entertainment around midnight, they did not form a single group and, so far as the record shows, neither group was acquainted with the other.

The Davis party congregated at the home of the Eisenzimmers in Spokane, at about eight-thirty o'clock in the evening, and shortly thereafter drove eastwardly, out along the highway known as Appleway, to Coeur d'Alene, Idaho, which is about thirty miles east of Spokane. Their purpose was to find a place where they could dance. After driving around Coeur d'Alene for a short while, they turned back toward Spokane and stopped at a place called The Plantation. Finding that place crowded, they continued on westwardly to an establishment known as the State Line Beer Garden, which operates a beer dispensary and a large dance hall on Appleway about twenty-five miles east of Spokane. Arriving there at about eleven-thirty p. m., they entered the resort and engaged a table. They remained there until shortly before one-thirty a. m., and during the interim danced with each other. As may be expected, during the course of the trial, counsel for the respective litigants in turn closely interrogated the various witnesses for the opposing side, while under cross-examination, as to the possible consumption of liquor by the members of his or her particular group, and we will for that reason advert to the evidence on that subject. During the two-hour stay at the State Line Beer Garden, the Davis party ordered two pitchers of beer, of which they drank about three-fourths of the contents, amounting to two or three glasses apiece.

The Browne party, consisting of Robert W. Browne and his five companions, congregated in Spokane shortly after eight o'clock in the evening of December 31st, and then visited a tavern known as Hy and Guys, where they had some beer. Later, after driving around Spokane for a

while, they proceeded out to the State Line Beer Garden where they arrived at about eleven-thirty in the evening. There they had several glasses of beer between the time of their arrival and the time of their departure shortly before one-thirty in the morning. The record discloses no positive evidence that any member of either group consumed any intoxicating beverage other than beer during the entire course of the evening. Robert W. Browne admitted, however, that shortly after the accident here involved and while still at the scene he was arrested and charged with driving an automobile while under the influence of intoxicating liquor; that the charge was later reduced to one of reckless driving; and that his bond on the reduced charge was thereafter forfeited.

Taking up the thread of events culminating in the collision, it appears that the Browne party left the beer garden shortly before one-thirty a. m. and proceeded westwardly along Appleway toward Spokane. The Davis party apparently left a few minutes later and proceeded in the same direction and along the same course. The night was very cold, registering a temperature of approximately zero, but was clear, although there is some evidence that a slight fog prevailed. The pavement was dry.

The accident occurred on Appleway about two miles west of the State Line Beer Garden. In that vicinity, Appleway is a four-lane highway extending generally in an easterly and westerly direction and consists of two strips of pavement, each twenty feet in width, with a four-foot strip of gravel between them. Along the middle of the northerly strip of pavement, which accommodates travel going in a westerly direction, is a yellow line marking the division between the two northerly lanes. The road is virtually straight and also level, except for a slight rise therein approaching a point located several hundred feet east of the place of collision. On each side of the highway is a dirt shoulder approximately six feet wide.

The Browne car, driven by Robert W. Browne, passed the point where the rise in the road terminated and, several

hundred feet beyond that point, was brought to a dead stop in the middle of the northerly strip of pavement, that is to say, astride the yellow line dividing the two northerly lanes. According to Robert W. Browne's testimony, the car was stopped because the occupants of the rear seat had complained of being cold, and a change of seats was therefore suggested, making it necessary to change drivers also. The two red taillights of the car were aglow at the time, however, as were also the headlights.

In the meantime, the Davis party had also left the State Line Beer Garden, proceeding in their car westwardly along Appleway, and were approaching the point where the collision shortly took place. The car was traveling at a speed of from thirty-five to forty miles an hour, which was well within the speed limit permissible at that time. In their progress, their windshield became slightly clouded with vapor, and Davis, who was driving, once or twice wiped it off with his hand. The Browne car was not within range of Davis' vision until he reached the crest of the rise in the road. Arriving at that point, he observed the car ahead of him at a distance which he estimated to be about five hundred feet. Other testimony in the case, however, indicated that it was a lesser distance. At any rate, Davis at that time thought the car ahead of him was moving, when in fact it was stopped in the middle of the northerly half of the road.

Mr. Eisenzimmer, who is an experienced driver, testified that, when about two hundred fifty feet back of the Browne car, Davis, who was then driving along the extreme right-hand side of the highway, veered slightly to his left, with the evident intention of passing the Browne car on its left. This brought the Davis car directly in line with the Browne car. At a point about one hundred feet back of the Browne car, both Davis and Eisenzimmer realized for the first time that the car ahead was not in motion. Either because of Eisenzimmer's sudden warning or else because Davis at that same moment realized the situation, he immediately applied his brake and swung his car to the left to avoid a

collision. His attempt was unsuccessful, however, and the result was that the right front end of the Davis car struck the left rear end of the Browne car. The impact was with such force that the Browne car was thrown forward a distance of about twice its length, coming to rest crosswise upon, and near the right-hand edge of, the highway. The Davis car came to rest beyond the place of collision a distance of about twice the width of an automobile. Both cars were badly damaged, but, so far as the record shows, only the respondent occupants of the Davis car sustained any serious personal injury. Other facts will be stated in connection with our discussion of the particular issues involved.

Appellants concede that Robert W. Browne was guilty of negligence in stopping his car upon the main traveled portion of the highway as he did, instead of pulling off to the side thereof as far as possible in obedience to Rem. Rev. Stat., Vol. 7A, § 6360-110 [P. C. § 2696-868]. The contentions which appellants make upon the appeal are: (1) That Davis, personally and as the agent of respondent Florence Davis, was, at the time in question, guilty of contributory negligence constituting a proximate cause of the injuries and damages; (2) that the respondents and the other occupants of the Davis automobile were at the time engaged in a joint venture, in consequence of which the negligence of Davis is to be imputed to the other respondents; and (3) that in no event could the appellants be held liable under the "family purpose" doctrine relating to the ownership and operation of automobiles.

The trial court refused to find, upon the evidence, that Davis, the respondent driver, was guilty of negligence under the circumstances, but, on the contrary, found that the negligence of Robert W. Browne was the proximate cause of the collision and of the resulting injuries and damages.

The defense of contributory negligence is an affirmative one, and the burden of establishing it by a preponderance of the evidence rests upon the party who asserts it. *Smith v. Seattle,* 178 Wash. 477, 35 P. (2d) 27; *Richardson*

*v. Pacific Power & Light Co.,* 11 Wn. (2d) 288, 118 P. (2d) 985.

██ The mere fact that Davis did not realize that the Browne car was stationary upon the highway until he himself was within approximately one hundred feet of it cannot be said to constitute negligence on his part regardless of all other circumstances. It was, of course, his duty to exercise reasonable care, under the existing circumstances, to observe the presence of the automobile ahead of him and avoid coming in contact with it. At the same time, he had the right to assume, until the contrary became reasonably apparent, that other users of the highway would conform to the rules of the road, and, likewise, to assume that a car ahead of him was in motion rather than that it was standing still in the middle of the road contrary to the positive injunction of the statute.

As suggested by the trial court in its memorandum decision, any experienced driver of an automobile knows how difficult it sometimes is during the hours of night to determine whether a car ahead of him showing red taillights is actually moving, or at what speed it is moving, or whether it is stopping, or has in fact stopped. It would be most natural for one to assume that a car ahead of him, particularly if it were occupying the middle of the road, was proceeding forward rather than standing still in violation of positive law.

In this instance, Davis was traveling along a course and at a rate of speed in conformity to law. Seeing the car ahead and thinking that it was in motion, he veered slightly to his left when two hundred fifty feet away, with the evident intention of overtaking and passing that car. Had the car ahead been moving, Davis most probably would have succeeded in passing it in safety. It was not until he was within approximately one hundred feet of the Browne car, that either he or his companions realized that it was standing still. We are unable to say that the trial court was in error in refusing to hold that, under the exist-

ing circumstances, Davis was guilty of negligence in not sooner discovering that the Browne car was stationary.

■ In this connection, it may also be stated that the estimate made by Davis concerning the distance of approximately one hundred feet intervening between his car and the Browne car at the time he first realized that the Browne car was stationary, was, according to his testimony, merely a guess on his part. The distance may, in fact, have been appreciably greater. Be that as it may, when he did realize the situation, he was confronted with an emergency and, acting upon the impulse of the moment, he applied his brake and swung farther to his left in an effort to avoid a collision. He can hardly be criticized for that action, for that is what we think any reasonably careful driver would then have done.

Appellants cite a number of cases in support of their contention that Davis must be held to have been guilty of contributory negligence. The factual situations in those cases and the inferences to be drawn therefrom, however, are different from those obtaining in this case and therefore they are not controlling here. Each case of this kind must be decided upon its own peculiar facts and the inferences that the trier of the fact is reasonably entitled to draw from the whole situation presented.

■ Appellants' second contention raises the question of joint venture. Inasmuch as we have disposed of the question of the alleged contributory negligence of Davis adversely to the appellants, there can be no imputation of such negligence against the other respondents. However, in view of the argument advanced by appellants, we shall advert briefly to this second contention.

In our opinion, the facts in this case as stated above present simply a case of host and guests, and not one of joint adventurers. The situation was merely one where Davis, having possession of the automobile with his mother's consent, invited his fiancee and a group of friends to accompany him in the car upon a social engagement. No contractual obligations whatever were involved, no

agreement for the sharing of expenses was made, and no material contribution of any kind was supplied by any of his companions. The incidental expenses incurred on the trip were all paid by him. If this kind of arrangement were held to be a joint venture, then it would be difficult to conceive a situation where one could accompany a friend on an automobile excursion without being held to be a joint adventurer. The trial court was right in holding that no joint venture existed. *Carboneau v. Peterson,* 1 Wn. (2d) 347, 95 P. (2d) 1043. See, further, *Poutre v. Saunders,* 19 Wn. (2d) 561, 143 P. (2d) 554.

Finally, appellants contend that the "family car," or "family purpose," doctrine, upon which respondents rely for recovery, does not apply to the facts of this case. The testimony with respect to the ownership and use of the Browne car came solely from the appellant Anna C. Browne and her son, Robert W. Browne, the driver of the automobile on the occasion here involved. The substance of their testimony was as follows:

The Buick car was purchased by the appellants in 1939 for the use of the family. Neither of the appellants, however, could operate it. Robert W. Browne, who lived at home with his parents, customarily did the driving. When the car was not in use, the keys were kept "most anywhere" in the house, usually on the sideboard, so that anyone could pick them up as desired. As a rule, Robert would take the car whenever he wished, without asking specific permission, and on such occasions would get the keys from wherever they happened to be, although sometimes he would tell his parents where he was going. Mrs. Browne testified as follows, however, with respect to this particular occurrence:

"Q. Was there any conversation the previous evening about Robert taking the car out? A. Only he asked if he could take it, and I said, 'No'. I would rather he wouldn't. Q. Did he say why he wanted it? A. Yes. He said he wanted to take some girls, or a girl, to a dance. Q. And what did you say to him about going to the dance? A. I said, 'If you want to take a girl, you can take a taxi.' I just

thought it would be a dangerous night for cars to be out, anyway. Q. Did you tell Robert that? A. Yes, I did."

In corroboration of his mother's testimony, Robert W. Browne testified:

"Q. Explain the circumstances under which you took the car that night. A. When my mother refused permission I got the keys without her knowledge and took the car. Q. Where did you secure the keys to the car that you were driving? A. From my mother's pocketbook. . . . Q. Did you tell your mother that you were taking or had taken the keys before you left home? A. No, I didn't."

■ It is well established that, in tort cases, where the vehicle doing the damage belonged to the defendants at the time of the injury, that fact raises the presumption, or establishes *prima facie,* that the vehicle was then in the possession of the owner, and that whoever was driving it was doing so for the owner. *Birch v. Abercrombie,* 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N.S.) 59; *Steiner v. Royal Blue Cab Co.,* 172 Wash. 396, 20 P. (2d) 39; *Templin v. Doan,* 187 Wash. 68, 59 P. (2d) 1110; *Van Court v. Lodge Cab Co.,* 198 Wash. 530, 89 P. (2d) 206.

■ It has also been uniformly held in this state, ever since it was so decided in *Birch v. Abercrombie, supra,* that one who furnishes a vehicle for the customary conveyance of the members of his family, whether for business or solely for pleasure, makes the transportation of such persons by that vehicle his affair, that is, his business, and anyone driving the vehicle for that purpose with his consent, express or implied, whether a member of his family or another, is his agent. *Hanson v. Eilers,* 164 Wash. 185, 2 P. (2d) 719; *Hart v. Hogan,* 173 Wash. 598, 24 P. (2d) 99; *King v. Cann,* 184 Wash. 554, 52 P. (2d) 900; *King v. Williams,* 188 Wash. 350, 62 P. (2d) 710; *Buss v. Wachsmith,* 190 Wash. 673, 70 P. (2d) 417; *Dillon v. Burnett,* 197 Wash. 371, 85 P. (2d) 656; *Werker v. Knox,* 197 Wash. 453, 85 P. (2d) 1041; *Cook v. Rafferty,* 200 Wash. 234, 93 P. (2d) 376; *Moffitt v. Krueger,* 11 Wn. (2d) 658, 120 P. (2d) 512.

■ While the foregoing presumption, or inference of

fact arising from proof of ownership of an automobile may be overcome by competent evidence from either interested or disinterested witnesses, nevertheless, to overcome such presumption, the countervailing testimony must be uncontradicted, unimpeached, clear, and convincing, and if, in the opinion of the trial court, such testimony does not attain that degree and character, the case is not to be dismissed upon defendant's motion for a directed verdict or for judgment of nonsuit, but must be submitted to the trier of the fact upon all the evidence then before the court. *Bradley v. S. L. Savidge, Inc.*, 13 Wn. (2d) 28, 123 P. (2d) 780, wherein the cases are collated and the rule formulated.

■ In the instant case, Mrs. Browne was a vitally interested witness, because she was a member of the marital community which owned the offending car and was a party to the action. Her son, Robert W. Browne, was also an interested witness, not only because of his family relationship and his connection with the accident, but also because, in fact, he was a party defendant in the action, although, on account of his military status, the action had been stayed as to him. The credibility of the witnesses was a matter primarily for the trial court to determine. The memorandum decision of that court expressly states that the testimony of those two witnesses was not clear, convincing, and unimpeached; that the alleged declination of permission to the son to use the car on the particular occasion was not a peremptory or absolute refusal, but, rather, was an expression of preference on the part of the mother.

The circumstances appearing in connection with this branch of the case are very similar to, and, we think, even stronger than, those shown in the *Birch* case, *supra*. In that case, this court said:

"The presumption attending ownership was not overcome, as a matter of law, by evidence of mere advice and an expression of preference on the part of the parents some weeks before that the daughter should not drive the machine [because of her physical condition], especially in view of the fact that antecedent knowledge and consent of the parents to her use of the machine were admitted by

the answers to the interrogatories [showing permissive use on previous occasions]. There being competent evidence from which the jury might reasonably find as it did, we must assume that Frances Abercrombie [the daughter] had been permitted the use of the machine and that she was at the time of the accident using it with the consent of her parents."

An additional fact which the trial court was entitled to take into consideration for what it may have been worth was that in their original answer, verified by Mrs. Browne, the appellants admitted the allegation contained in the complaint alleging that the Buick sedan had been purchased for family purposes and was being driven for such purposes by Robert W. Browne at the time of the collision; whereas, the amended answer denied that the car, though purchased for family purposes, was being so used at the time of the accident.

We are of the opinion that there was competent evidence from which the trial court could find, as it specifically did, not only that the Buick car was purchased for family purposes, but also that it was being driven by Robert W. Browne for that particular purpose at the time of the collision here involved.

The judgment is affirmed.

MILLARD, BLAKE, JEFFERS, MALLERY, and GRADY, JJ., concur.

BEALS, J. (dissenting in part)—The facts are clearly stated in the majority opinion, with which I am in accord as to the conclusion reached upon the second and third questions considered. Upon the first question, however, it is my opinion that the driver of the Davis car was guilty of contributory negligence, and that for this reason the trial court erred in not rendering judgment in appellants' favor, in so far as respondents Florence Davis and Arthur W. Davis, Jr., are concerned. The other respondents, being guests in the Davis car, are not bound by the contributory negligence of Arthur W. Davis, Jr., who was driving.

When the Davis car reached the crest of the rise in the

highway, the driver saw the Browne car in the roadway from five hundred to five hundred fifty feet ahead. The visibility was good, and the Browne car carried two red taillights, both of which were shining. Davis frankly stated that he saw the car, but that he assumed it was moving along the highway in the same direction in which he was proceeding. The Davis car, of course, rapidly approached the Browne car, Davis testifying that it was not until he was within from one hundred to one hundred ten feet of that car that he became aware of the fact that it was standing still. Up to this time he was in a position directly behind the Browne car. He turned his car to the left and applied his brakes, but, notwithstanding his efforts, collided with the stationary car, as stated in the majority opinion.

While the Davis car was advancing up the incline, the driver knew that, when he reached the crest, and before starting down the other side, he should make careful observation of that portion of the highway which he had previously been unable to see. Apparently he did this, as he at once saw the Browne car. He approached the car, of course overtaking it rapidly, as it was standing still, but he did not notice that the car was stationary until, as he testified, he was about one hundred feet distant therefrom. In the exercise of ordinary care, he should have been aware that the car was stationary prior to that instant, or should have had his car under control and avoided the collision. The driver, of course, must have been aware of the rapid rate at which he was overtaking the car ahead of him, which was at all times clearly visible. The presence of this car constituted an obvious danger which he was required to contemplate, and which he should have seasonably taken measures to avoid. He must have known that he could not continue on his present course, and he should have prepared by turning to his left to pass the car, assuming that he thought it was moving, before approaching as near to the Browne car as one hundred feet.

Of course a car on a highway at night gives some notice of its position and motion or lack of motion, by the beams

of light projected by its headlights. The amount of notice so given to the driver approaching from the rear might vary greatly under different circumstances, but this is an element to be considered. The visibility was good. The Browne car was at all times plainly visible, and, in my opinion, the record clearly shows that Davis was negligent, and that his negligence proximately contributed to the accident.

This view is supported by several of our decisions. In the case of *Ebling v. Nielsen*, 109 Wash. 355, 186 Pac. 887, on rehearing, 113 Wash. 698, 193 Pac. 569, a judgment in favor of the plaintiff, based upon damages suffered in an automobile collision, was reversed, the court holding that plaintiff driver was guilty of contributory negligence, he having run into the rear of a truck which had stopped on its right-hand side of the highway. As in the case at bar, the defendant had violated a statutory law of the road. At the time of the collision, it was dark. A heavy rain was falling. The negligence of the driver of the truck was clearly established, but it was held that the plaintiff "was guilty of contributory negligence of such pronounced and substantial sort as to bar him from any right of recovery."

In the case of *Reincke v. Tacoma R. & Power Co.*, 138 Wash. 304, 244 Pac. 577, a judgment in favor of the plaintiff, entered upon the verdict of a jury, was reversed, it appearing that the plaintiff, driving his automobile, ran into a parked tower truck. The accident happened at eleven o'clock in the evening, on a dark, rainy night. Plaintiff testified that the rear red light on the truck was obscured by evergreens hanging down over the light. This court reversed the judgment, with instructions to enter judgment in favor of the defendant, saying:

"It follows, we think, upon this record that there can be no serious question but that respondents' own negligence contributed proximately to the injuries suffered by them, and that it must be held as a matter of law, upon a consideration of all the evidence and all reasonable inferences to be drawn from it, that the respondents are not entitled to recover, and that appellant's motion for a directed verdict and for judgment notwithstanding the verdict, made in the trial court, should have prevailed."

In the case of *Ritter v. Johnson*, 163 Wash. 153, 300 Pac. 518, 79 A. L. R. 1270, this court, in affirming a judgment in favor of the plaintiff, said:

"The rule laid down by this court equally requires the driver of an automobile to keep such distance from a car ahead of him and maintain such observation of such car that an emergency stop may be safely made."

In *Cronin v. Shell Oil Co.*, 8 Wn. (2d) 404, 112 P. (2d) 824, the plaintiff sued to recover for injuries received as a result of a collision between his car and a truck belonging to defendant. Plaintiff had followed the truck for some distance when it suddenly slowed down or came to a stop. Plaintiff's attention having been momentarily distracted, he failed to notice this abrupt slackening of the speed of the preceding vehicle, and crashed into the rear end of the truck. This court, in an *En Banc* opinion, reversed the judgment of the lower court, entered upon the verdict of a jury, and held that plaintiff was guilty of contributory negligence which precluded his recovery.

In most of the cases cited, the driver of the following car was confronted with a sudden change in the situation of the car ahead of him with relation to his own vehicle. Nevertheless, his failure to be prepared to meet such a change and take appropriate steps to avoid colliding with the car ahead was held to constitute such contributory negligence as barred a recovery. In the case at bar, there was no change whatever in the situation of the Browne car from the time Davis first saw that car five hundred feet ahead of him, and Davis had the greater portion of that distance to estimate the situation, to observe that he was rapidly overtaking the Browne car, and to prepare to act as the situation required. If Davis was confronted with an emergency, as stated by the majority, it was one of his own creation. Assuming that Davis believed that the Browne car was moving along the highway, he should have been prepared to pass it with a due margin of safety, and, as this court said in the case of *Spencer v. Magrini*, 115 Wash. 29, 195 Pac. 1041:

"If the appellant desired to pass the respondent's car, it was his duty to give some warning and also to keep far enough to the left to avoid the respondent's car. This he did not do. He was therefore negligent."

It is the duty of the driver of an automobile in such a situation as was Davis in the case at bar to use due care to avoid colliding with a vehicle in front of him. *Bell v. Northwest Cities Gas Co.*, 164 Wash. 450, 2 P. (2d) 644. I am of the opinion that, under the principle approved in the case cited, it must be held that, on the facts in the case at bar, Davis was guilty of contributory negligence as matter of law.

In the case of *Beck v. Flasch*, 206 Wis. 431, 240 N. W. 190, the supreme court of Wisconsin reversed a judgment in favor of the plaintiff, who sued for damages resulting from an automobile collision, and directed that the action be dismissed. It appeared that plaintiff was driving his automobile along the highway and collided with the defendant's truck, which had been left standing on the pavement while the driver went in search of necessary gasoline. The plaintiff saw the truck when he was about one hundred fifty feet distant therefrom, but did not realize that it was stationary. A car approaching from the opposite direction prevented the plaintiff from passing the standing truck. The jury found that the driver of the truck was negligent. Its finding, it appears, was well founded. In the course of the opinion, the court said:

"Had the truck been moving slowly as respondent assumed it was, still by continuing to overtake it without reducing his speed he was failing to make proper preparation for an emergency likely to occur, in fact just such an emergency as did occur. A driver is bound to avail himself of opportunities to inform himself of the speed at which a car preceding him is traveling."

The case of *Kegler v. Hogland Transfer Co.*, 197 Wash. 566, 85 P. (2d) 1051, was not cited by either party in the briefs filed upon this appeal, and is not referred to in the majority opinion. The case, however, has been called to our attention, and is pertinent to the phase of the case at

bar in which I am not in accord with the majority opinion. Under the circumstances, I desire to discuss the case to which I referred, and express my disagreement with the rule laid down therein. I do this notwithstanding the fact that the case supports the conclusion reached by the majority.

In the case cited, the plaintiff had sued for damages suffered as the result of an automobile collision, and, from a judgment entered in plaintiff's favor upon the verdict of a jury, the defendants appealed. It appeared that the defendants had been guilty of violation of Laws of 1937, chapter 189, p. 861, § 33 (Rem. Rev. Stat., Vol. 7A, § 6360-33 [P. C. § 2696-817]) which provides that, when a truck or combination of commercial vehicles is stalled after dark in the main traveled portion of a public highway, the operator shall set out three lanterns or flares in positions as definitely stated by the statute. In the *Kegler* case, the driver of the truck had set out the flares, but they had burned out prior to the collision, leaving the truck standing in the main traveled portion of the highway, in violation of the statute referred to. It was held that this violation of the statute by the defendants' agent precluded a judicial holding that as matter of law the driver of plaintiff's car was guilty of contributory negligence. The court said:

"Appellants argue that this fact does not preclude holding the driver of respondent's car guilty of contributory negligence as a matter of law. We think, however, that, if the regulation is to accomplish the purpose for which it is designed, it must be held to have just exactly that effect."

The opinion, however, goes on to discuss the facts, and holds that it was for the jury to determine whether or not the driver of respondent's car was guilty of contributory negligence. The proposition stated was decisive of the case, but the court also discussed the factual situation, and on the facts held against the appellants' contention. I am not concerned with the result reached by the department of this court which decided the case, but only with that portion of the opinion above referred to.

In support of the proposition above stated, no authorities are cited. The opinion does not limit the rule laid down to violations of the particular section of the highway code above cited. As I understand the opinion, it is authority for the proposition that when it appears that in a case based upon an automobile collision the defendant had been guilty of violation of some statutory law of the highway, that fact alone precludes a judicial determination that as matter of law the plaintiff was guilty of contributory negligence which proximately contributed to the accident, and for that reason cannot recover. In my opinion, that portion of the opinion in the case cited states an erroneous principle.

Conceding that the violation of a statute or ordinance is negligence *per se,* the following quotation from 45 C. J., title Negligence, p. 633, § 4, is pertinent to that phase of the *Kegler* case now under discussion:

" 'Negligence *per se'* is a term which is frequently employed to designate an act or omission which is contrary to positive law, or so opposed to the dictates of common prudence that it can be said, without hesitation or doubt, that no careful person would have been guilty thereof; but it has been said that the expression 'negligence *per se'* has not acquired that precise and definite meaning which is essential to the prevention of ambiguity. This distinction between negligence *per se* and negligence not *per se* respects merely the method by which the existence of negligence is to be ascertained in particular instances. *When once its existence is determined, whether through the court's judicial cognizance or the jury's finding as a matter of fact, there is no further distinction made; and the one form of negligence has, in the further consideration of the case, just the same effect as the other—no more, no less."* (Italics mine.)

The rule laid down apparently embodies the principle that, if in such an action as this the plaintiff could show that the defendant was guilty of negligence *per se,* the defendant could not show, no matter how convincing the evidence which he introduced might be, that the plaintiff

was guilty of the same degree or a greater degree of negligence, and that the defendant was thereby entitled to judgment in his favor as matter of law. Granted that the section of the statute cited in the *Kegler* case is of great importance for the protection of travelers upon the highway, and that violation thereof constitutes gross negligence, nevertheless I am convinced that the rule laid down is too broad.

Contributory negligence is referred to in 45 C. J., title Negligence, p. 943, §§ 501-2, as follows:

"There are two essential elements in contributory negligence: (1) Negligence for which plaintiff is responsible. (2) Causal connection between such negligence and the injury complained of.

"The term 'contributory negligence' necessarily presupposes negligence for which defendant is responsible, which would of itself sustain an action but for the concurrence of the contributory negligence."

The decisions of this court in the case of *Ebling v. Nielsen, supra,* and *Metcalf v. Mud Bay Logging Co.,* 170 Wash. 59, 15 P. (2d) 278, are to the same effect.

The proposition stated in the *Kegler* case, *supra,* accords to negligence *per se* resulting from violation of a statutory law of the road a very different effect from the negligence of other classes. In my opinion, there is no sound basis in law for such a distinction. Negligence and contributory negligence are to be determined both as matter of fact and matter of law by the same standards. 45 C. J., title Negligence, pp. 942-3, § 501.

The case at bar was tried to the court and not to a jury. The evidence as to the circumstances surrounding the collision in the case at bar is not in dispute, and the court's finding, therefore, does not have the weight ordinarily attached to a finding made upon disputed testimony.

For the reasons stated, I am of the opinion that respondent Arthur W. Davis, Jr., was guilty of contributory negligence, and that, as to him and Florence Davis, the owner of the automobile, the judgment appealed from should be

reversed and the action dismissed. I accordingly dissent, in part, from the conclusion reached by the majority.

SIMPSON, C. J., and ROBINSON, J., concur with BEALS, J.